OSOLO TOWNSHIP (Elkhart County) Assessor, Elkhart County, Petitioner,

v.

ELKHART MAPLE LANE ASSOCI- ATES L.P., Incorrectly named as ELkhart Maple Lane Association, Respondent.

No. 49T10–0203–TA–31.

Tax Court of Indiana.

May 30, 2003.

Bodie J. Stegelmann, Craig M. Buche, Yoder, Ainlay, Ulmer & Buckingham, LLP, Goshen, IN, Attorneys for Petitioner.

Jeffrey B. Harding, Charles E. Davis, Swift & Finlayson, Fort Wayne, IN, Attorneys for Respondent.

FISHER, J.

The Osolo Township Assessor of Elkhart County, Indiana (the Assessor) appeals from three final determinations of the Indiana Board of Tax Review (Indiana Board) valuing the real property owned by Elkhart Maple Lane Associates L.P. (Ma-

ple Lane) for the 2001 assessment. The sole issue for the Court to decide is whether the Indiana Board erred in classifying Maple Lane's land.

## FACTS AND PROCEDURAL HISTORY

Maple Lane owns "Maple Lane in the Woods," a 77–building apartment complex standing on approximately 63 acres of land in Osolo Township, Elkhart County, Indiana. The complex is located in a wooded setting with wooded areas between all the apartment buildings and parking lots.

For the 2001 assessment, the Elkhart Property Tax Assessment Board of Appeals (PTABOA) assigned Maple Lane's land the following classifications: 42.597 acres as "primary"; 1.73 acres as "roadway"; and 18.699 acres as "usable undeveloped." The PTABOA included within its "primary" classification all of Maple Lane's wooded areas located between the apartment buildings and parking lots.

Maple Lane subsequently challenged the PTABOA's assessment by filing three Form 131 Petitions for Review of Assessment (Forms 131) with the State Board of Tax Commissioners (State Board).[1] In its Forms 131, Maple Lane alleged that its wooded areas should have been classified as "usable undeveloped."

On December 18, 2001, the State Board held an administrative hearing. On February 1, 2002, the Indiana Board issued three final determinations on the matter.[2]

---

1. Maple Lane's real property is comprised of three separate real estate parcels. For purposes of the proceedings before the State Board and this Court, the three separate appeals were consolidated.

2. On December 31, 2001, the legislature abolished the State Board. 2001 Ind. Acts 198 § 119(b)(2). Effective January 1, 2002, the

legislature created the Indiana Board of Tax Review (Indiana Board) as "successor" to the State Board. IND.CODE §§ 6–1.5–1–3; 6–1.5–4–1 (Supp.2001); 2001 Ind. Acts 198 § 95. Consequently, when the final determinations were issued on Maple Lane's appeal in February 2002, they were issued by the Indiana Board.

In its final determinations, the Indiana Board reclassified Maple Lane's wooded areas from "primary" to "usable undeveloped."[3]

The Assessor appealed the Indiana Board's final determinations to this Court on March 15, 2002. The Court heard oral argument on February 21, 2003. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

This Court gives great deference to final determinations of the Indiana Board. *Wittenberg Lutheran Vill. Endowment Corp. v. Lake County Prop. Tax Assessment Bd. of Appeals*, 782 N.E.2d 483, 486 (Ind. Tax Ct.2003). Consequently, the Court will reverse a final determination of the Indiana Board only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND.CODE § 33-3-5-14.8(e)(1)-(5) (Supp. 2002). Furthermore, the party seeking to overturn the Indiana Board's final determination bears the burden of proving its invalidity. *See Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1233 (Ind. Tax Ct.1998). In order to meet that burden, the party seeking reversal must have submitted, during the administrative hearing process, probative evidence[4] regarding the alleged assessment error. *See id.* *See also State Bd. of Tax Comm'rs v. Gatling Gun Club*, 420 N.E.2d 1324, 1329 (Ind.Ct. App.1981) (stating that only that evidence that was submitted at the administrative level is subject to judicial review).

## DISCUSSION

For the 2001 assessment, commercial and industrial land was classified according to its use. IND. ADMIN. CODE tit. 50, r. 2.2-4-17 (1996). Indeed, Indiana's property tax assessment regulations provided that assessing officials could classify commercial and industrial land in one of four ways:

"Primary commercial or industrial land" refers to the primary building or plant site. The following are examples of primary land:

(A) Land located under buildings.

(B) Regularly used parking areas.

(C) Roadways.

(D) Regularly used yard storage.

(E) **Necessary support land.**

"Secondary commercial or industrial land" refers to land utilized for purposes which are secondary to the primary use of the land. The following are examples of secondary land:

(A) Parking areas that are not used regularly.

(B) Yard storage that is not used regularly.

---

**3.** As a result, the Indiana Board determined that only 12.3196 acres of Maple Lane's land were "primary" and 48.9764 acres were "usable undeveloped." The 1.73 acres that were designated as "roadway" by the PTABOA carry a zero value and therefore were not mentioned in the Indiana Board's final determination.

**4.** Probative evidence is evidence sufficient to establish a given fact that, if not contradicted, will remain sufficient. *Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1233 (Ind. Tax Ct.1998).

\* \* \* \* \*

"Unusable undeveloped commercial and industrial land" means vacant land that is unusable for commercial or industrial purposes.

"Usable undeveloped commercial and industrial land" means vacant land that is held for future commercial or industrial development.

IND. ADMIN. CODE tit. 50, r. 2.2–4–1(18), (19), (23), (24) (1996) (emphasis added). *See also* 50 IAC 2.2–4–17(b) (stating that "primary" land is "the amount of acreage necessary to support the existing facility and its purposes").

The Assessor contends that, under the regulations, the Indiana Board erred when it classified Maple Lane's wooded areas as "usable undeveloped" land. More specifically, the Assessor contends that, pursuant to the assessment regulations, Maple Lane's wooded areas are "necessary support land" and should therefore be classified as "primary" land because the "wooded area[s] between the buildings allow[ ] Maple Lane to advertise itself as 'Maple Lane in the Woods' and . . . [to] describe[ ] its complex as 'our wooded Maple Lane community.' " (Pet'r Br. at 7.) Accordingly, the Assessor argues that "[t]h[ese] area[s] between the apartment buildings clearly support[ ] the existing facility under 50 IAC 2.2–4–17(b) and [are] part of the primary building site, under 50 IAC 2.2–4–1(18)." [5] *Id.* The Court, however, disagrees.

■ Duly promulgated property assessment regulations have the force of law and are therefore subject to the same rules of construction as statutes. *See Western Select Properties, L.P. v. State Bd. of Tax Comm'rs,* 639 N.E.2d 1068, 1073 (Ind. Tax Ct.1994). "The foremost goal of regulatory construction is to determine the intent of the [Indiana] Board by giving the words and phrases their plain, ordinary, and usual meaning and by reading the regulations within the context of the entire act of which they are a part." *State Bd. of Tax Comm'rs v. Two Market Square Associates Ltd. P'ship,* 679 N.E.2d 882, 885–86 (Ind.1997) (internal brackets, quotation, and punctuation omitted).

■ The portion of a parcel that is used as the primary building site is to be designated as "primary" land. 50 IAC 2.2–4–1(18). The regulation provides five examples of "primary" land: land located under buildings; land used as regular parking areas; land used for roadways; land used as regular yard storage; and land used as "necessary support." *Id.* The regulations do not, however, define "necessary support land." Therefore, the Court will give the phrase its plain, ordinary, and usual meaning as found in the dictionary. *See Johnson County Farm Bureau Coop. v. Indiana Dep't of State Revenue,* 568 N.E.2d 578, 581 (Ind. Tax Ct.1991), *aff'd* 585 N.E.2d 1336 (Ind.1992).

■ "Necessary" is defined as "that [which] cannot be done without . . . absolutely required: essential, indispensable." WEBSTER'S THIRD NEW INT'L DICTIONARY at 1511 (1981 ed.) "Support" is defined as "a means of livelihood, sustenance, or existence." *Id.* at 2297. Thus, "necessary support land," under 50 IAC 2.2–4–1(18) and in this context, is land that is "absolutely required and essential" to support the *operation* of, and the continued functioning as, an apartment complex. Here, incorporating the presence of trees into its

---

**5.** Indeed, the Assessor argues that "[t]he wooded area[s] that surround[ ] the apartment buildings [are] a marketing tool for the complex and need[ ] to be classified as primary land. The wooded area[s are] necessary to support the existing facility as stated in the definition of primary land in 50 IAC 2.2–4–17(b)." (*See, e.g.,* Cert. Admin. R. at 15.)

name adds very little to the actual operation and function of "Maple Lane in the Woods" itself. Indeed, if the trees were removed, the property could still operate and function as an apartment complex. Consequently, Maple Lane's wooded areas do not constitute "necessary support land" under 50 IAC 2.2–4–1(18).

 When the meaning of an administrative regulation is in question, the interpretation of the administrative agency is given great weight unless its interpretation would be inconsistent with the regulation itself. *Two Market Square*, 679 N.E.2d at 886 (citing *Dep't of State Revenue v. Bulkmatic Transport Co.*, 648 N.E.2d 1156, 1158 (Ind.1995)). This Court cannot say that the Indiana Board's interpretation of "necessary support land" is inconsistent with its "plain, ordinary, and usual meaning." Indeed, in its final determination, the Indiana Board states:

> The determination of necessary support land should include consideration of . . . local building requirements, restrictions, and covenants. . . . Even though the wooded areas clearly contribute to the appeal of the buildings, this fact alone

does not render the land necessary support land. . . . The [ ] wooded areas [therefore] do not meet the definition of necessary support land, and thus do not meet the definition of primary land. The proper classification is usable undeveloped.

(Cert. Admin. R. at 78.) Thus, the Indiana Board's interpretation of "necessary support land," as evidenced in its final determination is consistent with the term's plain, ordinary, and usual meaning. Consequently, the Assessor has failed to establish a basis to reverse the Indiana Board's final determination.[6]

## CONCLUSION

For the aforementioned reasons, the Indiana Board's final determination is AFFIRMED.

---

**6.** The Assessor also puts forth an "alternative" argument: Maple Lane, who bore the burden of proof at the State Board hearing, never made a prima facie case that its wooded areas met the regulatory definition of "usable undeveloped." In other words, the Assessor maintains that Maple Lane never made a prima facie showing that the land was "vacant" and "held for future development." *See* IND. ADMIN. CODE tit. 50, r. 2.2–4–1(24) (1996). Consequently, the Assessor argues that the PTABOA's classifications must stand. The Assessor is incorrect.

As the party challenging the propriety of an Indiana Board final determination, the Assessor bears the burden of demonstrating its

invalidity. *See Clark*, 694 N.E.2d at 1233. Consequently, the Assessor was required to present probative evidence showing why the Indiana Board's classification was improper. *See Deer Creek Developers, Ltd. v. Dep't of Local Gov't Fin.*, 769 N.E.2d 259, 265–66 (Ind. Tax Ct.2002) (stating that in grade challenges, it must be shown that either the grade assigned by the State Board was improper or what the proper grade for should have been). Because the Assessor failed to meet that burden (i.e., it could not show that the Indiana Board's final determination was inconsistent with the plain meaning of the regulation itself), this Court will not now reweigh Maple Lane's initial case.