**KOOSHTARD PROPERTY VI, LLC, Petitioner,**

v.

**WHITE RIVER TOWNSHIP ASSESSOR, Respondent.**

No. 49T10–0412–TA–57.

Tax Court of Indiana.

Nov. 3, 2005.

Timothy J. Vrana, Attorney at Law, Columbus, for Petitioner.

Steve Carter, Attorney General of Indiana, Allen R. Morford, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, J.

Kooshtard Property VI, LLC (Kooshtard) appeals the final determination of the Indiana Board of Tax Review (Indiana Board) valuing its real property for the March 1, 2002 assessment date. The sole issue before the Court is whether the Indiana Board erred in valuing Kooshtard's improvement.

## FACTS AND PROCEDURAL HISTORY

Kooshtard owns a gas station/convenience store in Johnson County, Indiana. The property was constructed in 1983 and remodeled in 1995. For the 2002 assessment date, Kooshtard's improvement was assigned a true tax value of $195,400. In arriving at that value, local assessing officials assigned Kooshtard's improvement an effective age of three and a condition rating of "average." Accordingly, Kooshtard's improvement received a nine percent (9%) physical depreciation adjustment.

Kooshtard, subsequently filed a Petition for Review of Assessment with the Indiana Board (Form 131) on November 17, 2003. In its Form 131, Kooshtard challenged the computation of its improvement's effective age. Specifically, Kooshtard claimed that under Indiana's Assessment Guidelines, its improvement had an effective age of 17. In turn, Kooshtard explained that an improvement with an effective age of 17 and a condition rating of "average" is entitled to receive a 37% physical depreciation adjustment.

The Indiana Board held a hearing on Kooshtard's Form 131 on August 19, 2004. On November 12, 2004, the Indiana Board issued its final determination in which it denied Kooshtard's request for relief.

Kooshtard filed an original tax appeal on December 17, 2004. The Court heard the parties' oral arguments on August 5, 2005. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ This Court gives great deference to final determinations of the Indiana Board when it acts within the scope of its authority. *Miller Village Prop. Co. v. Indiana Bd. of Tax Review*, 779 N.E.2d 986, 988 (Ind. Tax Ct.2002), *review denied.* Consequently, the Court will reverse a final determination of the Indiana Board only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND. CODE ANN. § 33–26–6–6(e)(1)–(5) (West 2005).

■ The party seeking to overturn the Indiana Board's final determination bears the burden of proving its invalidity. *Osolo Township Assessor v. Elkhart Maple Lane Assocs. L.P.*, 789 N.E.2d 109, 111 (Ind. Tax Ct.2003). In order to meet that burden, the party seeking reversal must have submitted, during the administrative hearing process, probative evidence regarding the alleged assessment error. *Id.* (footnote omitted). If that party meets its burden of proof and prima facie estab-

lishes that the Indiana Board's final determination is erroneous, the burden then shifts to the opposing party to rebut the challenging party's evidence. *See Meridian Towers East & West v. Washington Township Assessor*, 805 N.E.2d 475, 479 (Ind. Tax Ct.2003).

## DISCUSSION AND ANALYSIS

■ Under Indiana's assessment system, real property is assessed on the basis of its "true tax value." "True tax value" does not mean fair market value, but rather "[t]he market value-in-use of a property for its current use, as reflected by the utility received by the owner or a similar user, from the property." IND. CODE ANN. § 6–1.1–31–6(c) (West Supp.2005–2006); 2002 REAL PROPERTY ASSESSMENT MANUAL (2004 Reprint) (hereinafter, Manual) (incorporated by reference at IND. ADMIN. CODE tit. 50, r. 2.3–1–2 (2002 Supp.)) at 2. In turn, a property's market value-in-use "may be thought of as the ask price of property by its owner, because this value ... represents the utility obtained from the property, and the ask price represents how much utility must be replaced to induce the owner to abandon the property."[1] Manual at 2 (footnote added).

■ Three generally accepted appraisal techniques may be used to calculate a property's market value-in-use. *See id.* at 3. More specifically:

The first approach, known as the *cost approach*, estimates the value of the land as if vacant and then adds the depreciated cost new of the improvements to arrive at a total estimate of value. The second approach, known as the *sales comparison approach*, estimates the total value of the property directly by comparing it to similar, or comparable, properties that have sold in the market. The third approach, known as the *income approach*, is used for income producing properties that are typically rented. It converts an estimate of income, or rent, the property is expected to produce into value through a mathematical process known as capitalization.

*Id.* Indiana recognizes, however, that because "assessing officials are faced with the responsibility of valuing all properties within their jurisdictions during a reassessment[, they] often times do not have the data or time to apply all three approaches to each property." *Id.* Accordingly, the primary method for Indiana assessing officials to determine a property's market value-in-use is the cost approach.[2] To that end, Indiana (through the now non-existent State Board of Tax Commissioners) has promulgated a series of guidelines that explain the application of the cost approach in detail. *See* REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002—VERSION A (2004

---

1. "In markets in which sales are not representative of utilities, either because the utility derived is higher than indicated sale prices, or in markets where owners are motivated by non-market factors such as the maintenance of a farming lifestyle even in the face of a higher use value for some other purpose, true tax value will not equal value in exchange. In markets where there are regular exchanges, so that ask and offer prices converge, true tax value will equal value in

exchange[.]" 2002 REAL PROPERTY ASSESSMENT MANUAL (2004 Reprint) (hereinafter, Manual) (incorporated by reference at IND. ADMIN. CODE tit. 50, r. 2.3–1–2 (2002 Supp.)) at 2.

2. "[T]he cost approach has historically been used in mass appraisal by assessing officials since data is available to apply it to all properties within a jurisdiction." *Id.* at 3.

Reprint) (hereinafter, Guidelines), Books 1 and 2.[3]

 A property's market value-in-use (i.e., true tax value) as ascertained through an application of the Guidelines' cost approach is presumed to be accurate. *See* Manual at 5. Nevertheless, that presumption is rebuttable. Thus, a taxpayer

> shall be permitted to offer evidence relevant to the fair market value-in-use of the property to rebut such presumption and to establish the actual true tax value of the property as long as such information is consistent with the definition of true tax value provided in this [M]anual and was readily available to the assessor at the time the assessment was made. Such evidence may include actual construction costs, sales information regarding the subject or comparable properties, appraisals that are relevant to the market value-in-use of the property, and any other information compiled in accordance with generally accepted appraisal principles.

*Id.*

 Whatever approach is utilized, the Manual provides that the goal, or end-result, should be the same: to ascertain a property's market value-in-use. Consequently, while "[a]ll three [ ] approaches, when properly processed, should produce approximately the same estimate of value[,]" *id.* at 3, "situations may arise that are not explained or that result in assess-

ments that may be inconsistent with th[e] definition [of market value-in-use]. In those cases the assessor shall be expected to adjust the assessment to comply with this definition and may ... consider additional factors ... to accomplish th[at] adjustment." *Id.* at 2.

 Kooshtard asserts that pursuant to the instructions set forth in the Guidelines' cost approach, its improvement should have an effective age of 17 and, in turn, an improvement with an effective age of 17 and a condition rating of "average" is entitled to a 37% physical depreciation adjustment. (*See* Pet'r Br. at 3; Cert. Admin. R. at 19.) The Assessor argues, however, that Kooshtard's assessment should remain unchanged for two reasons: 1) Kooshtard's calculation of effective age fails to take into account the improvement's 1995 remodeling; and 2) Kooshtard's argument is based entirely on methodology and not on ascertaining the property's *true* true tax value. (Resp't Br. at 3–4.)

 The market value-in-use of an improvement must reflect, among other things, the presence of any physical depreciation. *See* Guidelines, Book 2, App. F at 4. Physical depreciation "is [the] loss in value caused by the building materials wearing out over time. It may be caused by wear and tear, use or abuse, action of the elements, and/or insect infestation." *Id.* Determining the degree of physical

---

**3.** "The calculation of cost [under the Guidelines, however,] is merely the starting point for estimating the true tax value of the improvements or structures. It sets the upper limit of value for the improvements." REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002—VERSION A (2004 Reprint) (hereinafter, Guidelines), Book 1 at 1. Furthermore,

> [t]he purpose of [the Manual/Guidelines] is to accurately determine "True Tax Value" ... not to mandate that any specific assess-

ment method be followed.... No technical failure to comply with the procedures of a specific assessing method violates this rule so long as the individual assessment is a reasonable measure of "True Tax Value[,]" and failure to comply with the ... Guidelines ... does not in itself show that the assessment is not a reasonable measure of "True Tax Value[.]"

IND. ADMIN. CODE tit. 50, r. 2.3–1–1(d) (2002 Supp.).

depreciation from which an improvement suffers involves, at its most basic level, a comparison of the improvement's condition relative to its age. *See id.* at 4–6, 24, 25, 31. Consequently, an improvement's condition rating must take into account any and all maintenance and modernization to the improvement.[4] *See id.* at 6 (footnote added).

As Kooshtard correctly explains, the Guidelines *do* provide that an improvement with an actual age of 16[5] and a condition rating of "average" has an effective age of 17 and is therefore entitled to a 37% physical depreciation adjustment. *See id.* at 24, 25, 31. Nevertheless, in determining the true tax value of Kooshtard's improvement, the maintenance and modernization to its improvement result-

ing from the 1995 remodel were to be taken into account. *See id.* at 6. Here, the administrative record reveals that the Assessor "tweaked" the effective age of Kooshtard's improvement not only to reflect the modernization and maintenance to the improvement as a result of its 1995 remodeling, but to make the improvement's true tax value (i.e., its market value-in-use) more consistent with its 2001 purchase price of $1,127,302. (Cert. Admin. R. at 78–79.) On the other hand, the administrative record reveals that Kooshtard did not account for those effects whatsoever when it claimed its improvement had an effective age of 17. (*See* Cert. Admin. R. at 36–53, 57–80.) Thus, the Court cannot say that Kooshtard presented a prima facie case that its assessment was in error.[6]

---

4. For instance, a condition rating of "excellent" indicates that "[a]ll items that can normally be repaired or refinished have recently been corrected, such as new roofing ... HVAC overhaul or replacement, etc." Guidelines, Book 2, App. F at 23. A condition rating of "average" indicates "[n]o evidence of deferred maintenance; need for a few minor repairs along with some refinishing. All major components still functional for age of the structure." *Id.* In contrast, an improvement with a condition rating of "very poor" reflects the fact that "[e]xtensive repairs [are] needed; the structure suffers from extensive deferred maintenance and is near the end of its physical life." *Id.*

5. For purposes of the 2002 assessment, an improvement's actual age is the difference between its date of construction and January 1, 1999. *See id.* at 5. Thus, Kooshtard's improvement's actual age is 16 (1999–1983).

6. To the extent that Kooshtard suggests that the Assessor should have perhaps "tweaked" the improvement's condition rating rather than its effective age (*see* Pet'r Reply Br. at 1), the Court agrees. *See* Guidelines, Book 2, App. F at 24 (stating that an improvement's effective age is computed by correlating its actual age with its condition rating). Nevertheless, a technical failure to comply with the procedures set forth in the Guidelines' cost

approach does not render an assessment invalid as long as the individual assessment is *a reasonable measure of true tax value.* 50 IAC 2.3–1–1(d) (emphasis added). To this end, the Assessor seems to assert in this case that, when challenging an assessment, a taxpayer *cannot* base its claim on *how* the cost approach (as contained in the Guidelines) was applied; rather, the taxpayer must present evidence indicating that the property's market value-in-use as determined through the cost approach is not an accurate indicator as to its market value-in-use (i.e., an appraisal).

While the Manual and Guidelines do not appear to prohibit a taxpayer from challenging its assessment on the grounds that the cost approach was misapplied, the Court believes (and has for quite some time) that the most effective method to rebut the presumption that an assessment is correct is through the presentation of a market value-in-use appraisal, completed in conformance with the Uniform Standards of Professional Appraisal Practice (USPAP). Turn-around, however, is fair play. Thus, to the extent that assessing officials themselves utilize other market value-in-use evidence to justify their assessments, their evidence must conform to the same standards to which they would hold taxpayers' evidence.

Consider the following example. Had Kooshtard claimed that its assessment was

## CONCLUSION

For the above stated reasons, the Indiana Board's final determination is AFFIRMED.

erroneous by merely stating that "the improvement sold for $35,000 in 2001," the Assessor would have (presumably) found that Kooshtard failed to meet its burden of proof for the following reasons: 1) Kooshtard failed to present closing documents to verify the actual sales price; 2) Kooshtard failed to show this was an arms-length transaction; 3) Kooshtard did not trend the 2001 sale to reflect a 2002 purchase price; and 4) Kooshtard failed to account for or explain the vast difference between the improvement's purchase price its assessed (true tax) value of $195,400. Similarly, it simply cannot be enough in this case when the Assessor indicated that because the improvement sold in 2001 for $1,127,320, its assessment of $195,400 was justified. (Cert. Admin. R. at 79.)