**FIDELITY FEDERAL SAVINGS & LOAN, Petitioner,**

v.

**JENNINGS COUNTY ASSESSOR, Respondent.**

No. 49T10–0410–TA–48.

Tax Court of Indiana.

Nov. 3, 2005.

an accurate indicator of its market value-in-use, the Court will as well.

Timothy J. Vrana, Attorney At Law, Columbus, for Petitioner.

Steve Carter, Attorney General of Indiana, Allen R. Morford, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, J.

Fidelity Federal Savings & Loan (Fidelity) appeals the final determination of the Indiana Board of Tax Review (Indiana Board) valuing its real property for the March 1, 2002 assessment date. The sole issue before the Court is whether the Indiana Board erred in valuing Fidelity's improvement.

## FACTS AND PROCEDURAL HISTORY

Fidelity owns a bank in Jennings County, Indiana. For the 2002 assessment date, the Jennings County Assessor (Assessor) assigned Fidelity's property a true tax value of $203,300 ($49,000 for land and $154,300 for improvements).

Believing this value to be too high, Fidelity filed a Petition for Review of Assessment (Form 130) with the Jennings County Property Tax Assessment Board of Appeals (PTABOA). In its Form 130, Fidelity challenged, among other things, the Assessor's interior finish calculation. More specifically, Fidelity argued that pursuant to Indiana's Assessment Manual and Guidelines, its improvement was entitled to a reduction equivalent to approximately $10.00 per square foot to reflect the fact that it was without partitions. (*See* Cert. Admin. R. at 10, 48, 74.) On September 12, 2003, after conducting a hearing on the matter, the PTABOA recommended no change to the assessment.

Fidelity subsequently filed a Petition for Review of Assessment with the Indiana Board (Form 131) on October 10, 2003. In its Form 131, Fidelity again claimed it was entitled to a negative interior partitioning adjustment. The Indiana Board held a hearing on Fidelity's Form 131 on May 20, 2004. On September 14, 2004, the Indiana Board issued its final determination in which it denied Fidelity's request for relief.

Fidelity filed an original tax appeal on October 1, 2004.[1] The Court heard

---

1. In answering Fidelity's appeal, the Assessor raised the affirmative defense that this Court lacked: 1) jurisdiction of the subject matter; 2) jurisdiction of the person; and 3) jurisdiction of the particular case. (Resp't Answer at 2.) For the following reasons, however, the Assessor's affirmative defense is denied.

"Subject matter jurisdiction is the power of a court to hear and determine the general class of cases to which the proceedings before it belong." *Musgrave v. State Bd. of Tax Comm'rs,* 658 N.E.2d 135, 138 (Ind.Tax Ct.1995) (citation omitted). A determination as to whether subject matter jurisdiction exists depends solely on "whether the type of claim advanced by the petitioner falls within the general scope of authority conferred upon the court by constitution or statute." *Id.* While the appropriate means for a party to challenge a court's subject matter jurisdiction is either as an affirmative defense in its responsive pleading (answer) or in a Trial Rule 12(B)(1) motion to dismiss, the issue of a court's subject matter jurisdiction cannot be waived. *See* Ind. Trial Rules 8(C), 12(B); *Foor v. Town of Hebron,* 742 N.E.2d 545, 548 (Ind.Ct.App.2001) (citation omitted).

the parties' oral arguments on August 5, 2005. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ This Court gives great deference to final determinations of the Indiana Board when it acts within the scope of its authority. *Miller Village Prop. Co. v. Indiana Bd. of Tax Review,* 779 N.E.2d 986, 988 (Ind.Tax Ct.2002), *review denied.* Consequently, the Court will reverse a final determination of the Indiana Board only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

The general scope of authority conferred upon the Tax Court is governed by Indiana Code § 33-26-3-1. This statute provides that the Tax Court has "exclusive jurisdiction over any case that arises under the tax laws of Indiana and that is an initial appeal of a final determination" of the Indiana Board. IND. CODE ANN. § 33-26-3-1 (West 2005). Fidelity's appeal meets both jurisdictional prerequisites: it challenges the assessment of Indiana's property tax and it requests review of a final determination of the Indiana Board. Accordingly, the Court finds that it has subject matter jurisdiction over Fidelity's appeal.

"Personal jurisdiction is the court's power to bring a person into its adjudicative process and render a valid judgment over [him or her]." *LinkAmerica Corp. v. Cox,* 828 N.E.2d 388, 391 (Ind.Ct.App.2005) (citation omitted). The assertion that a court lacks personal jurisdiction must be timely raised or it is waived. *State v. Omega Painting, Inc.,* 463 N.E.2d 287, 290-91 (Ind.Ct.App.1984). The proper method of challenging the personal jurisdiction of a court is as an affirmative defense in the answer or in a Trial Rule 12(B)(2) motion to dismiss. *Id.* at 290; *LinkAmerica,* 828 N.E.2d at 392. A party's choice of one method over the other does not, however, alter the fact that that party bears the burden of proof on the matter. *See* T.R. 8(C); *Lee v. Goshen Rubber Co.,* 635 N.E.2d 214, 215 (Ind.Ct.App.1994) (stating that when a person attacks the court's jurisdiction over him, he bears the burden of proof upon that issue by a preponderance of the evidence,

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND. CODE ANN. § 33-26-6-6(e)(1)-(5) (West 2005).

■ The party seeking to overturn the Indiana Board's final determination bears the burden of proving its invalidity.

unless the lack of jurisdiction is apparent upon the face of the complaint), *trans. denied.*

Here, the Assessor has provided nothing to enlighten this Court as to why it does not have personal jurisdiction. (Resp't Answer at 2.) Moreover, it is not apparent from the face of the complaint why this Court lacks personal jurisdiction. The Court will not make the Assessor's case for it. The issue that the Court lacks personal jurisdiction is therefore deemed waived.

Finally, "[j]urisdiction over the particular case refers to the 'right, authority, and power to hear and determine a specific case within the class of cases over which a court has subject matter jurisdiction.'" *Carroll County Rural Elec. Membership Corp. v. Indiana Dep't of State Revenue,* 733 N.E.2d 44, 50 (Ind.Tax Ct.2000) (internal quotation and citation omitted). Like personal jurisdiction, the assertion that a court lacks jurisdiction over a particular case is voidable and must therefore be timely objected to or it is waived. *Foor,* 742 N.E.2d at 548. The appropriate means to challenge a court's jurisdiction over a particular case is in a Trial Rule 12(B)(6) motion to dismiss. *See Carroll Co.,* 733 N.E.2d at 50.

The Assessor has not filed a 12(B)(6) motion to dismiss. Furthermore, the Assessor's answer has, again, provided nothing to explain or support its claim that the Tax Court lacks jurisdiction over the case. (*Cf.* Resp't Answer *with* the *entire* Fidelity file.) The issue that this Court lacks jurisdiction over the particular case is therefore deemed waived.

*Osolo Township Assessor v. Elkhart Maple Lane Assocs. L.P.*, 789 N.E.2d 109, 111 (Ind.Tax Ct.2003). In order to meet that burden, the party seeking reversal must have submitted, during the administrative hearing process, probative evidence regarding the alleged assessment error. *Id.* (footnote omitted). If that party meets its burden of proof and prima facie establishes that the Indiana Board's final determination is erroneous, the burden then shifts to the opposing party to rebut the challenging party's evidence. *See Meridian Towers East & West v. Washington Township Assessor*, 805 N.E.2d 475, 479 (Ind.Tax Ct.2003).

## DISCUSSION AND ANALYSIS

■ Under Indiana's assessment system, real property is assessed on the basis of its "true tax value." "True tax value" does not mean fair market value, but rather "[t]he market value-in-use of a property for its current use, as reflected by the utility received by the owner or a similar user, from the property." IND. CODE ANN. § 6–1.1–31–6(c) (West Supp.2005–2006); 2002 REAL PROPERTY ASSESSMENT MANUAL (2004 Reprint) (hereinafter, Manual) (incorporated by reference at IND. ADMIN. CODE tit. 50, r. 2.3–1–2 (2002 Supp.)) at 2. In turn, a property's market value-in-use "may be thought of as the ask price of property by its owner, because this value ... represents the utility obtained from the property, and the ask price represents how much utility must be

replaced to induce the owner to abandon the property."[2] Manual at 2 (footnote added).

■ Three generally accepted appraisal techniques may be used to calculate a property's market value-in-use. *See id.* at 3. More specifically:

> The first approach, known as the *cost approach,* estimates the value of the land as if vacant and then adds the depreciated cost new of the improvements to arrive at a total estimate of value. The second approach, known as the *sales comparison approach,* estimates the total value of the property directly by comparing it to similar, or comparable, properties that have sold in the market. The third approach, known as the *income approach,* is used for income producing properties that are typically rented. It converts an estimate of income, or rent, the property is expected to produce into value through a mathematical process known as capitalization.

*Id.* Indiana recognizes, however, that because "assessing officials are faced with the responsibility of valuing all properties within their jurisdictions during a reassessment[, they] often times do not have the data or time to apply all three approaches to each property." *Id.* Accordingly, the primary method for Indiana assessing officials to determine a property's market value-in-use is the cost approach.[3] To that end, Indiana (through the now

---

2. "In markets in which sales are not representative of utilities, either because the utility derived is higher than indicated sale prices, or in markets where owners are motivated by non-market factors such as the maintenance of a farming lifestyle even in the face of a higher use value for some other purpose, true tax value will not equal value in exchange. In markets where there are regular exchanges, so that ask and offer prices converge, true tax value will equal value in

exchange[.]" 2002 REAL PROPERTY ASSESSMENT MANUAL (2004 Reprint) (hereinafter, Manual) (incorporated by reference at IND. ADMIN. CODE tit. 50, r. 2.3–1–2 (2002 Supp.)) at 2.

3. "[T]he cost approach has historically been used in mass appraisal by assessing officials since data is available to apply it to all properties within a jurisdiction." *Id.* at 3.

non-existent State Board of Tax Commissioners) has promulgated a series of guidelines that explain the application of the cost approach in detail. *See* REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002—VERSION A (2004 Reprint) (hereinafter, Guidelines), Books 1 and 2.[4]

■ A property's market value-in-use (i.e., true tax value) as ascertained through an application of the Guidelines' cost approach is presumed to be accurate. *See* Manual at 5. Nevertheless, that presumption is rebuttable. Thus, a taxpayer

> shall be permitted to offer evidence relevant to the fair market value-in-use of the property to rebut such presumption and to establish the actual true tax value of the property as long as such information is consistent with the definition of true tax value provided in this [M]anual and was readily available to the assessor at the time the assessment was made. Such evidence may include actual construction costs, sales information regarding the subject or comparable properties, appraisals that are relevant to the market value-in-use of the property, and any other information compiled in accordance with generally accepted appraisal principles.

*Id.*

■ Whatever approach is utilized, the Manual provides that the goal, or end-result, should be the same: to ascertain a property's market value-in-use. Consequently, while "[a]ll three [ ] approaches, when properly processed, should produce approximately the same estimate of value[,]" *id.* at 3, "situations may arise that are not explained or that result in assessments that may be inconsistent with th[e] definition [of market value-in-use]. In those cases the assessor shall be expected to adjust the assessment to comply with this definition and may ... consider additional factors ... to accomplish th[at] adjustment." *Id.* at 2.

■ Fidelity asserts that pursuant to the instructions set forth in the Guidelines' cost approach, its improvement is entitled to a negative partitioning adjustment. The Indiana Board agrees. (Cert. Admin. R. at 22.) Nevertheless, the Indiana Board determined that it would not make the adjustment because:

> The [Assessor] presented a property record card of another commercial property of similar size and general features and character, located in the same designated neighborhood. The [Assessor] presented evidence that the comparable property was sold as a vacant building in 2002 for $394,000, a sale price far exceeding the subject property's true tax value. The vacant building was [then] remodeled as a bank and sold again in 2003 for $750,000.... The evidence strongly suggests that the market value in exchange of the subject is most likely

---

4. "The calculation of cost [under the Guidelines, however,] is merely the starting point for estimating the true tax value of the improvements or structures. It sets the upper limit of value for the improvements." REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002—VERSION A (2004 Reprint) (hereinafter, Guidelines), Book 1 at 1. Furthermore,

> [t]he purpose of [the Manual/Guidelines] is to accurately determine "True Tax Value" ... not to mandate that any specific assessment method be followed.... No technical failure to comply with the procedures of a specific assessing method violates this rule so long as the individual assessment is a reasonable measure of "True Tax Value[,]" and failure to comply with the ... Guidelines ... does not in itself show that the assessment is not a reasonable measure of "True Tax Value[.]"

IND. ADMIN. CODE tit. 50, r. 2.3–1–1(d) (2002 Supp.).

closer to the price of the similar nearby property converted to an identical use[.] The Board will not ignore the logic associated with the [Assessor]'s position and agrees that a partitioning adjustment is not appropriate under these circumstances.[5]

(Cert. Admin. R. at 22–23 (footnote added).) Consequently, the Indiana Board determined that the Assessor "rebutted [Fidelity's] prima facie case with market evidence showing that [Fidelity's] assessed value [wa]s not excessive." (Cert. Admin. R. at 23.) The Court, however, disagrees.

The property record card the Assessor presented at the administrative hearing indicates that the property, which was a vacant Hardee's fast-food restaurant, was sold in October 2002 for $394,000, was remodeled as a bank, and was sold the next year for $750,000. (*See* Cert. Admin. R. at 62.) Other than the fact that both properties function as banks, the record in this case is completely devoid of any comparison, written or oral, between the two properties.[6]

 Time and time again, this Court has reminded taxpayers that as part of making a prima facie case, "[i]t is the taxpayer's duty to walk the [Indiana Board and this] Court through every element of [its] analysis." *See, e.g., Clark v. Dep't of Local Gov't Fin.*, 779 N.E.2d 1277, 1282 n. 4 (Ind.Tax Ct.2002). Thus, a taxpayer cannot "generically claim without explanation that [it] made a prima facie case then [ ] cite to ... the record as though the evidence speaks for itself." *Id.* Likewise, the Court has frequently re-

minded taxpayers that statements that another property "is similar" or "is comparable" are nothing more than conclusions, and conclusory statements do not constitute probative evidence. *See, e.g., Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1119 (Ind.Tax Ct.1998), *review denied.* Rather, when challenging an assessment on the basis that comparable property has been treated differently, the taxpayer must provide specific reasons as to why it believes the property is comparable. *See Lacy Diversified Indus. v. Dep't of Local Gov't Fin.*, 799 N.E.2d 1215, 1221 (Ind.Tax Ct.2003).

These standards are no less applicable to assessing officials when they attempt to rebut a prima facie case. Consequently, it was not the Indiana Board's responsibility to review the record card submitted by the Assessor to determine whether that property was indeed comparable—that duty rested with the Assessor. The Assessor was therefore responsible for explaining to the Indiana Board the characteristics of Fidelity's property, how those characteristics compared to those of the purportedly comparable property, and how any differences affected the relevant market value-in-use of the properties. The record is completely devoid of such explanation, and therefore the Assessor's evidence carries no probative value.

## CONCLUSION

Fidelity presented a prima facie case that its property's true tax value was in

---

5. In essence, the Assessor's argument was that Fidelity's true tax value warranted no change "because [its] property was already under valued [in comparison to the vacant building] ... [and] the partition adjustment would only create a greater deviation from the just tax value of the property." (Resp't Br. at 2–3.)

6. The Indiana Board even states in its final determination that "[other] than the features revealed on the property record cards, the comparability of the remodeled bank property and the subject is not determinable from the record." (Cert. Admin. R. at 35.)

error. The Assessor failed to rebut Fidelity's case. Accordingly, the Indiana Board's final determination is REVERSED and the matter is REMANDED to the Indiana Board so that it may instruct the local assessing officials to apply the negative partitioning adjustment consistent with this opinion.[7]

7. The Court finds it interesting that the Assessor has asked for a second bite at the apple: "if the Court believes that the Assessor failed to show the similarities between Fidelity and the DuPont State Bank, the Assessor respectfully requests that this issue be remanded to the [Indiana] Board for further review." (Resp't Br. at 6.) The Assessor does not get a second chance to do what it was required to do in the first instance.