Mark & Jon **ECKERLING**, Petitioners,

v.

**WAYNE TOWNSHIP ASSESSOR,**
Respondent.

No. 49T10–0502–TA–12.

Tax Court of Indiana.

Feb. 2, 2006.

Timothy J. Vrana, Attorney at Law, Columbus, for Petitioners.

Steve Carter, Attorney General of Indiana, Jennifer E. Gauger, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, J.

Mark & Jon Eckerling (the Eckerlings) appeal the final determination of the Indiana Board of Tax Review (Indiana Board) valuing their real property for the 2002 assessment year. The issue on appeal is whether the Indiana Board erred in upholding the Wayne Township Assessor's (Assessor) assessment under the residential pricing guidelines.

## FACTS AND PROCEDURAL HISTORY

The Eckerlings own land and an improvement located at 3830 West Morris Street, Wayne Township, Marion County, Indiana. The improvement was constructed in 1948 as a single-family residence; however, the Eckerlings currently use it as an office for their company, Macling Enterprises, Inc. No interior, exterior, or structural changes were made to the house in order to convert it to office use.

For the March 2002 assessment, the Assessor valued the subject property at $75,800 ($3,400 for the land, $72,400 for the improvement) based on the residential pricing guidelines. The Eckerlings filed an appeal with the Marion County Property Tax Assessment Board of Appeals

(PTABOA), arguing that because the improvement was used as an office, not a residence, it should be assessed according to the General Commercial Residential (GCR) schedule rather than the residential pricing guidelines. The PTABOA affirmed the assessment and the Eckerlings subsequently filed a Petition for Review of Assessment (Form 131) with the Indiana Board. An administrative hearing was held and, on January 20, 2005, the Indiana Board issued its final determination upholding the assessment.

The Eckerlings filed an original tax appeal with this Court on February 9, 2005. The Court heard the parties' oral arguments on November 3, 2005. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ This Court gives great deference to final determinations of the Indiana Board. *Wittenberg Lutheran Vill. Endowment Corp. v. Lake County Prop. Tax Assessment Bd. of Appeals,* 782 N.E.2d 483, 486 (Ind. Tax Ct.2003), *review denied.* Consequently, the Court will reverse a final determination of the Indiana Board only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND. CODE ANN. § 33–26–6–6(e)(1)–(5) (West 2006).

■ The party seeking to overturn the Indiana Board's final determination bears the burden of proving its invalidity. *Osolo Twp. v. Elkhart Maple Lane Assocs., L.P.,* 789 N.E.2d 109, 111 (Ind. Tax Ct.2003). In order to meet that burden, the party seeking reversal must have submitted, during the administrative hearing process, probative evidence regarding the alleged assessment error. *Id.* (footnote omitted). If that party meets its burden of proof and prima facie establishes that the Indiana Board's final determination is erroneous, the burden then shifts to the opposing party to rebut the challenging party's evidence. *See Meridian Towers East & West v. Washington Twp. Assessor,* 805 N.E.2d 475, 479 (Ind. Tax Ct.2003).

### Discussion

■ Under Indiana's assessment system, real property is assessed on the basis of its "true tax value." "True tax value" does not mean fair market value, but rather "[t]he market value-in-use of a property for its current use, as reflected by the utility received by the owner or a similar user, from the property." 2002 REAL PROPERTY ASSESSMENT MANUAL (hereinafter, Manual) (incorporated by reference at IND. ADMIN. CODE tit. 50, r. 2.3–1–2 (2002 Supp.)) at 2. *See also* IND. CODE ANN. § 6–1.1–31–6(c) (West 2006). In turn, a property's market value-in-use "may be thought of as the ask price of property by its owner, because this value … represents the utility obtained from the property, and the ask price represents how much utility must be replaced to induce the owner to abandon the property."[1] Manual at 2 (footnote added).

---

**1.** "In markets in which sales are not representative of utilities, either because the utility

Three generally accepted appraisal techniques may be used to calculate a property's market value-in-use. *See id.* at 3. More specifically:

> The first approach, known as the *cost approach*, estimates the value of the land as if vacant and then adds the depreciated cost new of the improvements to arrive at a total estimate of value. The second approach, known as the *sales comparison approach*, estimates the total value of the property directly by comparing it to similar, or comparable[ ] properties that have sold in the market. The third approach, known as the *income approach*, is used for income producing properties that are typically rented. It converts an estimate of income, or rent, the property is expected to produce into value through a mathematical process known as capitalization.

*Id.* Indiana recognizes, however, that because "assessing officials are faced with the responsibility of valuing all properties within their jurisdictions during a reassessment[, they] often times do not have the data or time to apply all three approaches to each property." *Id.* Accordingly, the primary method for Indiana assessing officials to determine a property's market value-in-use is the cost approach.[2] To that end, Indiana (through the now non-existent State Board of Tax Commissioners) has promulgated a series of guidelines that explain the application of the cost approach in detail. *See* REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002—VERSION A (hereinafter, Guidelines), Books 1 and 2.

The calculation of cost under the Guidelines, however, "is merely the starting point for estimating the true tax value of [an] improvement[ ] or structure[ ]. It sets the upper limit of value for the improvement[ ]." Guidelines, Book 1 at 1. Furthermore,

> [t]he purpose of [the Manual/Guidelines] is to accurately determine "True Tax Value" ... not to mandate that any specific assessment method be followed. ... No technical failure to comply with the procedures of a specific assessing method violates this rule so long as the individual assessment is a reasonable measure of "True Tax Value[,]" and failure to comply with the ... Guidelines ... does not in itself show that the assessment is not a reasonable measure of "True Tax Value[.]"

IND. ADMIN. CODE tit. 50, r. 2.3–1–1(d) (2002 Supp.).

A property's market value-in-use (i.e., true tax value), as ascertained through an application of the Guidelines' cost approach, is presumed to be accurate. *See* Manual at 6. Nevertheless, that presumption is rebuttable. Thus, a taxpayer

> Shall be permitted to offer evidence relevant to the fair market value-in-use of the property to rebut such presumption and to establish the actual true tax value of the property as long as such information is consistent with the definition of true tax value provided in this [M]anual

derived is higher than indicated sale prices, or in markets where owners are motivated by non-market factors such as the maintenance of a farming lifestyle even in the face of a higher use value for some other purpose, true tax value will not equal value in exchange. In markets where there are regular exchanges, so that ask and offer prices converge, true tax value will equal value in exchange.

change[.]" 2002 REAL PROPERTY ASSESSMENT MANUAL (hereinafter, Manual) (incorporated by reference at IND. ADMIN. CODE tit. 50, r. 2.3–1–2 (2002 Supp.)) at 2.

**2.** "[T]he cost approach has historically been used in mass appraisal by assessing officials since data is available to apply it to all properties within a jurisdiction." *Id.* at 3.

and was readily available to the assessor at the time the assessment was made. Such evidence may include actual construction costs, sales information regarding the subject or comparable properties, appraisals that are relevant to the market value-in-use of the property, and any other information compiled in accordance with generally accepted appraisal principles.

*Id.*

Whatever approach is utilized, the Manual provides that the goal, or end-result, should be the same: to ascertain the property's market value-in-use. Consequently, while "[a]ll three [ ] approaches, when properly processed, should produce approximately the same estimate of value[,]" *id.* at 3, "situations may arise that are not explained or that result in assessments that may be inconsistent with th[e] definition [of market value-in-use]. In those cases the assessor shall be expected to adjust the assessment to comply with this definition and may ... consider additional factors ... to accomplish th[at] adjustment." *Id.* at 2.

The Eckerlings assert that pursuant to the Guidelines, its improvement should have been valued under the GCR General Office model.[3] More specifically, they argue that because an assessment must reflect an improvement's market value-in-use, and because their improvement is being used as an office, it must therefore be assessed as an office. (*See* Pet'r Br. at 4.) To support its claim, the Eckerlings presented, among other things, a written statement indicating that the subject property is used as a business office and a property record card showing the Ecker-

lings' suggested assessed value as calculated under the GCR schedule. (Cert. Admin. R. at 26, 60, 64, 68.)

As previously stated, the goal under Indiana's new assessment scheme is to ascertain the property's market value-in-use. As Indiana employs a mass appraisal system, assessors often operate under the constraints of limited time and resources; therefore, the regulations provide a starting point for the assessor to determine the property's market value-in-use. *See* Manual at 3; Guidelines, Book 1 at 1. Thus, to the extent that an assessor may err in applying the regulations correctly, this will not necessarily invalidate the assessment so long as the assessment accurately reflects the property's market value-in-use. *See* IND. ADMIN. CODE tit. 50, r. 2.3–1–1(d) (2002 Supp.).

Therefore, when a taxpayer chooses to challenge an assessment, he or she must show that the assessor's assessed value does not accurately reflect the property's market value-in-use. Strict application of the regulations is not enough to rebut the presumption that the assessment is correct. *See id.* Indeed, this Court has previously stated that "the most effective method to rebut the presumption that an assessment is correct is through the presentation of a market value-in-use appraisal, completed in conformance with the Uniform Standards of Professional Appraisal Practice (USPAP)." *Kooshtard Prop. VI, LLC v. White River Twp. Assessor,* 836 N.E.2d 501, 506 n. 6 (Ind. Tax Ct.2005). In addition, taxpayers may utilize "actual construction costs, sales information regarding the subject or comparable properties, ... and any other in-

---

3. The General Commercial Residential (GCR) schedule "includes use types generally associated with commercially-operated residential accommodations. These types are more typical of residential-type construction than com-

mercial-type construction." REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002—VERSION A (hereinafter, Guidelines), Book 2, Chapter 6 at 9.

formation compiled in accordance with generally accepted appraisal principles" so long as such information was readily available to the assessor at the time the assessment was made. Manual at 5–6. If, through the use of this evidence, the taxpayer can demonstrate that their suggested value accurately reflects the property's true market value-in-use (and, consequently, that the assessor's assessed value failed to accurately reflect market value-in-use), then the taxpayer will have established a prima facie case and the burden will then shift to the assessor to rebut the taxpayer's evidence.

In challenging their assessment, the Eckerlings have offered none of the aforementioned market value-in-use evidence. Rather, they have focused strictly on the Assessor's methodology. The Eckerlings

have not shown, however, that the Assessor's methodology resulted in an assessment that failed to accurately reflect their property's market value-in-use. Accordingly, the Court cannot say that the Eckerlings presented a prima facie case that their assessment was in error.[4]

## CONCLUSION

For the above stated reasons, the Indiana Board's final determination is AFFIRMED.

---

**4.** Although it does not alter the result of this case, the Court notes that even under the Eckerlings' suggested approach (i.e., strict application of the regulations), they have failed to establish a prima facie case. Under the old assessment scheme, which was based upon strict application of the regulations, taxpayers who argued that they had been assessed under the wrong schedule were required to compare the features of their improvement to the features listed in the regulations. *See LDI Mfg. Co. v. State Bd. of Tax Comm'rs*, 759 N.E.2d 685, 688 (Ind. Tax Ct.2001). The Eckerlings, however, failed to do this.