**INDIANA MHC, LLC, Petitioner,**

v.

**SCOTT COUNTY ASSESSOR, Respondent.**

No. 39T10–1009–TA–52.

Tax Court of Indiana.

May 3, 2013.

Andrew J. Vandiver, Adams, Stepner, Woltermann & Dusing, PLLC, Covington, KY, Attorney for Petitioner.

Gregory F. Zoeller, Attorney General of Indiana, John P. Lowrey, Timothy A. Schultz, Deputy Attorneys General, Indianapolis, IN, Attorneys for Respondent.

WENTWORTH, J.

Indiana MHC, LLC appeals from the Indiana Board of Tax Review's final determination that Indiana MHC failed to prove its 2007 real property assessment was incorrect. The Court affirms the Indiana Board's final determination.

### FACTS AND PROCEDURAL HISTORY

Indiana MHC owns Amberly Pointe, a manufactured home community in Scottsburg, Indiana. The community is situated on approximately 33 acres of land and has 205 rentable pads.[1]

---

1. A person who owns a manufactured home may rent a pad on which to place the home. The pad includes a driveway off the street, footers on which the home is placed, and utility hook-up. (*See* Cert. Admin. R. at 578, 592.)

For the 2007 assessment, the Scott County Assessor assigned Amberly Pointe an assessed value of $5,400,300. Believing that value to be too high, Indiana MHC filed an appeal with the Scott County Property Tax Assessment Board of Appeals (PTABOA). The PTABOA reduced the assessment to $3,377,000. Still believing the assessment to be too high, Indiana MHC filed an appeal with the Indiana Board.

The Indiana Board held an administrative hearing on April 1, 2010. During the hearing, Kurtis Keeney, Indiana MHC's managing partner, testified that due to the manufactured home industry's "credit crisis" of 2005, only 85 of Amberly Pointe's 205 pads (i.e., 40%) were rented and generating income between 2005 and 2008. Consequently, he believed only those 85 pads had value for purposes of the 2007 assessment.[2] Keeney also claimed that approximately 2.6 of Amberly Pointe's 33 acres had no value because that acreage, zoned as "green space," could not generate any income at all. Using Amberly Pointe's 2007 actual data to illustrate what he believed its assessed value should be, Keeney submitted a worksheet with the following income capitalization approach: he took the total income generated by the 85 rented pads ($229,841) and reduced it by Indiana MHC's expenses in administering the property ($122,272) for a net operating income of $107,569; he then applied a capitalization rate of 10% to the $107,569 to arrive at a property value of $1,075,692.

On August 16, 2010, the Indiana Board issued a final determination affirming the PTABOA's assessment. In its final determination, the Indiana Board explained that when valuing property under the income capitalization approach,

it is appropriate to consider the historic and projected income and expense data of the property in question, but it is also necessary to consider that same kind of data from other comparable properties in order to make accurate, realistic projections about the income stream a property should be expected to produce. Where the income and expense data for the subject property is out of step with what the market data shows, generally accepted appraisal principles require further examination and analysis. For example, considering both types of income and expense data helps to protect against distortions and inaccurate value estimates that might be caused by extraneous factors (such as bad management or poor business decisions) that really have nothing to do with the inherent value of a property.

(Cert. Admin. R. at 283.) The Indiana Board therefore concluded that because Indiana MHC's income capitalization approach failed to take into account any market data whatsoever, it lacked probative value. As a result, the Indiana Board held that Indiana MHC failed to demonstrate that its 2007 assessment was erroneous.

Indiana MHC filed this original tax appeal on September 27, 2010. The Court heard oral arguments on October 28, 2011. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ A taxpayer seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity.

---

2. (See Cert. Admin. R. at 582–83 (asserting that when selling property, a purchaser "want[s] to pay you for exactly what's generating revenue [now], not what could happen in the future").) (See also Cert. Admin. R. at 610–11 (stating that potential property purchasers will only pay for what is actually generating revenue because "the rest of it is speculation").)

*Osolo Twp. Assessor v. Elkhart Maple Lane Assocs.*, 789 N.E.2d 109, 111 (Ind. Tax Ct.2003). Accordingly, Indiana MHC must demonstrate to the Court that the Indiana Board's final determination is, for example, arbitrary or capricious, an abuse of discretion, contrary to law, or not supported by substantial or reliable evidence. *See* IND.CODE § 33-26-6-6(e)(1), (5) (2013).

## DISCUSSION

On appeal, Indiana MHC argues that the Indiana Board's final determination is arbitrary and capricious because it disregarded the "substantial evidence" it presented demonstrating that Amberly Pointe's 2007 assessment should have been much lower: it had an occupancy rate of only 40% and its green space was "worthless." (Pet'r Br. at 1, 5–8.) Indiana MHC is incorrect.

■■■ An assessment, determined using the cost approach as set forth in Indiana's Property Assessment Manual and Guidelines, is presumed accurate. 2002 REAL PROPERTY ASSESSMENT MANUAL (2004 Reprint) ("Manual") (incorporated by reference at 50 IND. ADMIN. CODE 2.3-1-2 (2002 Supp.)) at 5. Nevertheless, a taxpayer that appeals an assessment

> shall be permitted to offer evidence relevant to the fair market value-in-use of the property to rebut such presumption[.] ... Such evidence may include actual construction costs, sales information regarding the subject or comparable properties, appraisals that are relevant to the market value-in-use of the property, *and any other information compiled in accordance with generally accepted appraisal principles.*

*Id.* (emphasis added). Thus, when contesting an assessment, a taxpayer may present evidence demonstrating its property's value using the income capitalization approach. *See* Manual at 3. *See also* APPRAISAL INSTITUTE, THE APPRAISAL OF REAL ESTATE 62–64 (12th ed. 2001)(explaining that the three generally accepted appraisal techniques for valuing property are the sales comparison approach, the cost approach, and the income capitalization approach).

■■■ The income capitalization approach values property based on its earning power and is informed not only by the principle of anticipation[3] but also by the expectations and behaviors of typical market participants. *See id.* at 471–72 (footnote added). *See also* Manual at 14. Indeed, in applying the income capitalization approach,

> the income expected to be earned by [a] subject property is estimated, allowing for *reasonable* expenses, vacancy, and/or collection loss, to arrive at net operating income (NOI). The NOI is subsequently converted to a present value by dividing it by a capitalization rate. The capitalization rate generally reflects the annual rate of return necessary to attract investment capital and is influenced by such factors as "apparent risk, market attitudes toward future inflation, the prospective rates of return for alternative investments, the rates of return earned by comparable properties in the past, the supply of and demand for mortgage funds, and the availability of tax shelters."

*Hometowne Assocs., L.P. v. Maley*, 839 N.E.2d 269, 275 (Ind. Tax Ct.2005) (citation omitted)(emphasis added). Consequently, to provide a sound value indi-

---

**3.** "All income capitalization methods, techniques, and procedures attempt to consider anticipated future benefits [of property ownership] and estimate their present value." Appraisal Institute, THE APPRAISAL OF REAL ESTATE 471 (12th ed. 2001).

cation under the income capitalization approach, one must not only examine the historical and current income, expenses, and occupancy rates for the subject property, but the income, expenses and occupancy rates of comparable properties *in the market* as well. *See* THE APPRAISAL OF REAL ESTATE at 493, 501, 509, 511–12.

■ Here, Indiana MHC's income capitalization approach failed to comply with generally accepted appraisal principles because it did not consider the occupancy rates of comparable properties in the market. In fact, the administrative record contains evidence that indicates Amberly Pointe's low occupancy rate of 40% was actually the anomaly in the market place. (*See* Cert. Admin. R. at 424 (showing that five other mobile home communities in the immediate vicinity had occupancy rates between 70% and 95%, despite the fact they charged higher rents).) As the Indiana Board explained, "[w]here the income and expense data for the subject property is out of step with what the market data shows, generally accepted appraisal principles require further examination and analysis ... [in order] to protect against distortions and inaccurate value

estimates that might be caused by extraneous factors (such as bad management or poor business decisions) that really have nothing to do with the inherent value of a property." (Cert. Admin. R. at 238.)

Based on Indiana MHC's failure to examine, analyze and reconcile its 40% occupancy rate in light of the much higher occupancy rates prevalent in the marketplace, the Indiana Board did not err in finding that Indiana MHC's income capitalization approach lacked probative value. Because Indiana MHC's income capitalization approach lacked probative value, the Indiana Board was correct in determining that Indiana MHC failed to prove its 2007 real property assessment was incorrect.[4]

## CONCLUSION

For the foregoing reasons, the Indiana Board's final determination is AFFIRMED.[5]

---

**4.** Given that Indiana MHC's income capitalization approach to value fails to comport with generally accepted appraisal principles and therefore lacks probative value, its argument that Amberly Pointe's green space is worthless also fails.

**5.** Indiana MHC has also argued that the Indiana Board's final determination is arbitrary and capricious because it "completely disregarded [ ] Keeney's testimony despite his strong credentials" as "an expert in the mo-

bile home community industry[.]" (Pet'r Br. at 1, 3.)(*See also* Cert. Admin. R. at 563–64.) The Indiana Board did not, however, "completely disregard" Keeney's testimony; rather, it indicated that the weight of Keeney's testimony was diminished because—regardless of whether or not he was an expert in the mobile home community industry—he did not establish that he complied with generally accepted appraisal principles in performing his income capitalization approach to value. (*See* Cert. Admin. R. at 282–84.)