ATTORNEYS FOR PETITIONER:
**PATRICK L. JESSUP**
**MICHAEL M. YODER**
YODER & KRAUS P.C.
Kendallville, IN

ATTORNEYS FOR RESPONDENT:
**CURTIS T. HILL, JR.**
ATTORNEY GENERAL OF INDIANA
**MATTHEW R. ELLIOTT**
**REBECCA MCCLAIN**
**WINSTON LIN**
DEPUTY ATTORNEYS GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

**FILED**

Sep 24 2018, 3:24 pm

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| | |
|---|---|
| GARRETT LLC, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Cause No. 49T10-1712-TA-00022 |
| ) | |
| ) | |
| NOBLE COUNTY ASSESSOR, ) | |
| ) | |
| Respondent. ) | |

### ON APPEAL FROM A FINAL DETERMINATION
### OF THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**September 24, 2018**

WENTWORTH, Judge

Garrett LLC challenges the final determination of the Indiana Board of Tax Review that established the assessed value of its real property for the 2016 tax year. Upon review, the Court affirms the Indiana Board's final determination.

**FACTS AND PROCEDURAL HISTORY**

Garrett is in the business of acquiring, remediating, and reselling contaminated properties. (Cert. Admin. R. at 162.) In June 2014, Garrett purchased for $1.00 the former Dalton Foundry, a property located in Kendallville, Indiana that was owned by the Dalton Corporation and had been vacant since 2009. (Cert. Admin. R. at 55, 59-60.)

After purchasing the property, Garrett hired contractors to do both a Phase I and Phase II evaluation of the property's environmental contamination, which disclosed that its soil and ground water contained chlorinated solvents and metal contamination. (See Cert. Admin. R. at 164-65, 182.) In addition, the evaluations revealed that the property was covered with foundry sand, requiring two feet of clay surface and a foot of topsoil in order to build on it. (Cert. Admin. R. at 183-84.)

Garrett entered a Voluntary Remediation Program with the State of Indiana that exchanged a covenant not to sue for the remediation of the property. (See Cert. Admin. R. at 185-86.) Garrett sold a ten-acre portion of the property, referred to as The Mound, at a discount to East Noble School Corporation for building a new middle school. (Cert. Admin. R. at 165-67, 177-78.) The sale proceeds helped Garrett fund both the demolition of the old Dalton factory and the environmental cleanup costs. (Cert. Admin. R. at 178.)

For the assessment date of March 1, 2015, the Noble County Assessor valued the property at $200,000: $72,600 for 25.03 acres of land and $127,400 for the improvements. (Cert. Admin. R. at 87-88, 154-55.) Garrett protested the assessment to the Noble County Property Tax Assessment Board of Appeals (PTABOA). After an informal meeting, the Assessor did not lower the $200,000 assessed value, but did agree to reallocate the property's assessed value by reducing the land value to $68,900 and

increasing the value of the improvements to $131,100.  (See Cert. Admin. R. at 56-58, 87.)  The parties signed a Form 134 - Joint Report by Taxpayer / Assessor to the County Board of Appeals of a Preliminary Informal Meeting (Form 134) to that effect on March 16, 2015.  (Cert. Admin. R. at 56-58.)

On May 20, 2015, Garrett transferred 4.75 acres of the property to Garrett Well, LLC.  (Cert. Admin. R. at 67-68, 168.)  Thereafter, Garrett demolished all the buildings on the portion of the property it retained.  (See Cert. Admin. R. at 169-71, 177-78.)

For the assessment date of January 1, 2016, the Assessor valued the property at $131,700: $121,700 for 20.28 acres of land and $10,000 for improvements.  (Cert. Admin. R. at 89-90.)  Garrett protested the 2016 assessment to the PTABOA and the PTABOA reduced the total assessed value to $105,400:  $95,400 for the land and $10,000 for the improvements.   (See Cert. Admin. R. at 5-9, 89.)  Still dissatisfied, Garrett pursued an appeal with the Indiana Board.  (Cert. Admin. R. at 1-2.)

On August 3, 2017, the Indiana Board conducted a hearing on Garrett's appeal. During the hearing, Garrett claimed that its land had zero value, but indicated it would be willing to accept the previously agreed upon land value of $68,900 because the property had not been changed since then.  (Cert. Admin. R. at 160-61, 193.)  In support, Garrett presented: (1) evidence that it purchased the contaminated property for $1.00 from Dalton Corporation in 2014, (2) a list of properties it considered "comparable" with their property tax records, and (3) the Form 134 from its 2015 PTABOA appeal.  (See Cert. Admin. R. at 55-66, 84, 181-89.)

On November 1, 2017, the Indiana Board issued its final determination, concluding that Garrett had provided undisputed probative evidence for reducing the 2016

3

assessment of improvements by demonstrating that no buildings remained on the property on the January 1, 2016, assessment date.[1] (Cert. Admin. R. at 111-12 ¶¶ 17(n), (o), (p), 18.) The Indiana Board further concluded, however, that Garrett's evidence was not probative of the property's 2016 market value-in-use. (Cert. Admin. R. at 111 ¶ 17(m).) Accordingly, the Indiana Board left the land valuation of $95,400 unchanged. (See Cert. Admin. R. at 112 ¶ 18.)

On December 13, 2017, Garrett initiated this original tax appeal. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity. Osolo Twp. Assessor v. Elkhart Maple Lane Assocs., 789 N.E.2d 109, 111 (Ind. Tax Ct. 2003). Thus, to prevail Garrett must demonstrate to the Court that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. See IND. CODE § 33-26-6-6(e)(1)-(5) (2018).

## ANALYSIS

On appeal, Garrett claims the Indiana Board's final determination is an abuse of discretion, arbitrary and capricious, and unsupported by substantial evidence because it

---

[1] The Indiana Board's final determination reduced the 2016 assessment of improvements to reflect that no buildings were present on the assessment date. (See Cert. Admin. R. at 111-12 ¶¶ 17-(n), (o), (p), 18.) Asphalt paving listed on the 2016 property record card was also assessed as improvements. (See Cert. Admin. R. at 89-90, 111-12 ¶ 17(p) n. 3.)

4

failed to find Garrett's evidence of 1) the property's 2014 sales price, 2) the comparable properties, and 3) the agreed land value for the 2015 assessment date probative of the subject property's 2016 market value-in-use. (See Pet'r Br. at 3, 6-10.)

### 1. 2014 Sales price

To support a reduction in its property's assessed value, Garrett had the burden to provide market-based evidence (e.g., sales data, appraisals, construction costs, etc.) showing that the assessment did not accurately reflect the property's market value-in-use. See 2011 REAL PROPERTY ASSESSMENT MANUAL ("Manual") (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2 (2011)) at 3. The Indiana Board determined, however, that the property's June 2014 sales price was not probative evidence of the property's 2016 market value-in-use because Garrett did not present evidence a) that the price was the result of a market value sale, b) that it was valueless because it was contaminated land, and c) how the June 2014 sales price related to the January 1, 2016 assessment date. (Cert. Admin. R. at 109-10 ¶¶ 17(d)-(h).)

### a) Market Value Sale

During the period at issue, Indiana defined "market value" as

> The most probable price, as of a specified date . . . for which the specified property rights should sell after reasonable exposure in a competitive market under all conditions requisite to a fair sale, with the buyer and seller each acting prudently, knowledgably, and for self-interest, and assuming neither is under undue duress.

Manual at 5-6 (emphasis added). The Indiana Board stated that Garrett "failed to establish the property was exposed to the market for a reasonable time." (See Cert. Admin. R. at 110 ¶ 17(g), 163-64 (stating Garrett learned about the property through a personal meeting with the mayor and not from a sale listing).) The Indiana Board further

stated that the 2014 sale appeared to be the result of undue duress because the property was vacant and up for tax sale.[2]  (See Cert. Admin. R. at 110 ¶ 17(g) (stating that the Indiana Board assumed the Dalton Corporation abandoned the property).)

Even though the transaction was not a market value sale, the Indiana Board noted that it was possible that this transaction could still qualify as a reliable indicator of the property's 2016 market value-in-use.  Garrett failed, however, to rebut "the preponderance of the evidence [ ] that the sale was not reliable "by providing some evidence the sale is reliable."  (Cert. Admin. R. at 110 ¶ 17(h).)  Accordingly, after weighing the evidence, the Indiana Board concluded that the 2014 sales price, by itself, was not probative of the property's 2016 market value-in-use.  (See Cert. Admin. R. at 110 ¶ 17(h).)

The administrative record contains no evidence that the property was exposed to the market.  (See generally Cert. Admin. R.; see also Pet'r Br. at 8-9 n.1.)  Garrett argues, nonetheless, that in this case "[s]tandard exposure to the market would have been a useless act" because the property's contamination and need for environmental remediation made the property "effectively unmarketable."  (See Pet'r Br. at 5, 8 (reasoning that "common sense explains [the property] is not marketable").)  In addition, Garrett claims that the Dalton Corporation, a publicly held corporation, did not sell the property under undue duress, but fulfilled its fiduciary duty to its shareholders by selling the property, ostensibly a net liability, for a $1.00 net gain.  (See Pet'r Br. at 8 (postulating that because "the property was a net liability does not [] mean that the seller was under

---

[2] In its brief, Garrett corrected the Indiana Board's conclusion by noting that the property had not been up for tax sale, but it had been vacant since 2009.  (See Pet'r Br. at 8-9 n.1; Cert. Admin. R. at 55.)

undue duress[, i]t merely means that the property had no value in its current condition").) Garrett's arguments are unpersuasive, however, because they are conclusory statements masking the absence of evidence in the record that the 2014 sales price was reliable and thus probative of the 2016 market value-in-use.

b) Value of Contaminated Property

Next, Garrett claimed that the June 2014 sales price reflected the property's market-value-in-use on the 2016 assessment date because contaminated property is valueless. (See Pet'r Br. at 8-9.) Indeed, the Indiana Board acknowledged that contamination can have an impact on a property's value. (See Cert. Admin. R. at 109 ¶ (d) (explaining that "the existence of contamination could greatly lower a property's value").)

Evidence that a property suffers from contamination, however does not by itself necessitate a finding that a property is valueless. See e.g., Lake Cty. Assessor v. U.S. Steel Corp., 901 N.E.2d 85, 93-95 (Ind. Tax Ct. 2009) (explaining that evidence must be presented to quantify the impact of the contamination on the land's value), review denied. Accordingly, Garrett was required to provide evidence quantifying its conclusion that its contaminated property was valueless. See Fisher v. Carroll Cty. Assessor, 74 N.E.3d 582, 590 (Ind. Tax Ct. 2017) (explaining that although a property's condition actually may render it valueless, "an objective, factual basis is necessary to sustain such a finding").

The record is devoid of any objective factual basis that would support Garrett's claim that its property has no value simply because it is contaminated. There is evidence in the record, however, that is contrary to Garrett's claim. (See, e.g., Cert. Admin. R. at 171-75 (indicating that a buyer initiated the purchase of another foundry that Garrett

7

owned while it was still in a contaminated state), 165-68, 177-78 (indicating that Garrett sold a portion of the subject property to East Noble School Corporation and used the proceeds of that sale to help fund the demolition and cleanup costs for the subject property).) Thus, Garrett's arguments again are unpersuasive, lacking evidence relating the contamination to the property's claimed market-value-in-use.

c) Relating the Sales Price to the Relevant Valuation Date

Finally, the Indiana Board reasoned that the June 2014 sales price was not probative because Garrett failed to relate the sales price to the valuation date that was approximately 18 months later - January 1, 2016. (Cert. Admin. R. at 110 ¶ 17(e).) See also IND. CODE § 6-1.1-2-1.5 (2016) ("the annual assessment date for tangible property is . . . January 1 in a year beginning after December 31, 2015"); Manual at 3 ("any evidence relevant to the true tax value of the property as of the assessment date may be presented to rebut the presumption of correctness of the assessment") (emphasis added).

The Court has recognized that in assessment challenges, taxpayers can present property values from a period different from the assessment date "as long as they attempt to relate that evidence to the appropriate valuation and assessment dates." See Marion Cty. Assessor v. Simon DeBartolo Group, LP, 52 N.E.3d 65, 70 (Ind. Tax Ct. 2016). Here, the record reveals that Garrett made no such attempt. (See generally Cert. Admin. R.)

Instead of pointing to evidence in the record that related the 2014 sale price to the appropriate valuation date, Garrett implies that showing the relationship is unnecessary because "[e]ighteen months is not a significant period for a property that sat vacant and unusable for a half a decade." (Pet'r Br. at 7.) Without citing an authority or any evidentiary basis for its assertion, however, Garret's bald assertion will not carry the day.

8

See U.S. Steel, 901 N.E.2d at 94 ("a mere opinion or conclusion does not constitute probative evidence") (citation omitted).

## 2. Comparable Properties

Next, Garrett challenges the Indiana Board's determination that its evidence of comparable properties was not probative of its property's 2016 market-value-in-use. (See Pet'r Br. at 7-9.) At the administrative hearing, Garrett presented a one-page summary of three properties as follows:

### COMPARABLES

1. 703 GOODWIN STREET– Abandoned Foundry transferred to Garrett, LLC by Commissioner's Tax Deed. Prior to this it failed to sell at tax sale. Garrett, LLC paid no money to the County for the Deed. [Kendallville Foundry]

2. 420 LISBON ROAD– An eyesore for years that was transferred by Commissioners Tax Deed. [Kendallville Iron & Metal]

3. 205 WEST WAYNE STREET– Commonly known as the McCray building. It is an abandoned Commercial building that has been an eyesore for years. It has been offered at tax sale for years and never sold. Current delinquent taxes are $476,719.03. [McCray Building]

(See Cert. Admin. R. at 84.) In addition, Garrett submitted the property tax records for two of the properties: Kendallville Iron & Metal and the McCray Building properties. (See Cert. Admin. R. at 72-74, 78-83.) Moreover, there was testimony in the record, although scanty, regarding the Kendallville Foundry and the McCray Building. (See Cert. Admin. R. at 55, ¶¶ 4-5 (within the Kendallville Mayor's affidavit), 171-76 (regarding the Kendallville Foundry), 176 (regarding the McCray Building).) This evidence reveals that

9

all three industrial/commercial properties were transferred either by Commissioner's Tax Deed, sold at a tax sale, or as yet unsold at tax sales. (See Cert. Admin. R. at 84.)

The Indiana Board, assuming Garrett intended the evidence regarding these properties to apply a sales-comparison approach,[3] found this evidence was not probative because Garrett did not provide evidence, explanation, or analysis comparing these properties to the subject property and did not explain how any differences may affect determining the subject property's market value-in-use. (See Cert. Admin. R. at 110-11 ¶¶ 17(i)-(j).) See also Manual at 9-10 (stating that under the sales comparison approach, an "appraiser considers and compares all possible differences between the comparable properties and the subject property that could affect value").

Notably, Garrett did not compare the type or extent of any contamination on its property with any contamination, or lack thereof, on the three properties it presented as comparable even though it argues that contamination is the basis for reducing its assessment. (See generally Cert. Admin. R.) Indeed, Garrett provided so little information about these three properties that the Indiana Board had to infer the reason it was presented. (See Cert. Admin. R. at 110 ¶ 17(i) ("[w]hile [Garrett] did not discuss them, a list of purportedly comparable properties was introduced as evidence[; the Indiana] Board infers that [Garrett] intended to use the sales-comparison approach to prove the property's value").)

---

[3] The sales comparison approach, one of the three generally accepted appraisal methods expressly authorized under Indiana's property tax assessment system, is "based on the assumption that potential buyers will pay no more for the subject property than it would cost them to purchase an equally desirable substitute improved property already existing in the market place." See 2011 REAL PROPERTY ASSESSMENT MANUAL ("Manual") (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2 (2011)) at 9.

Whether Garrett offered this evidence as a sales comparison approach or as other evidence to rebut the presumption of the assessment's correctness, it failed to make it clear to the Indiana Board how the evidence substantiates its claims of a lower value. (See Cert. Admin. R. at 110-11 ¶¶ 17(i)-(j).) The Court has repeatedly reminded parties that they must walk the Indiana Board, and this Court, through every element of their analyses. See, e.g., Clark v. Dep't of Local Gov't Fin., 779 N.E.2d 1277, 1282-83 n. 4 (Ind. Tax Ct. 2002); Long v. Wayne Twp. Assessor, 821 N.E.2d 466, 471 (Ind. Tax Ct. 2005) review denied. This did not happen here. As a result, the Court will not reverse the Indiana Board's finding that the evidence of comparable properties carried no probative value.

### 3. 2015 Assessed Value

Finally, the Indiana Board determined that the subject property's value for 2015 was not probative of its 2016 market value-in-use. (Cert. Admin. R. at 111 ¶¶ 17(k)-(*l*).) The Indiana Board explained that the 2015 value resulted from an agreement between Garrett and the Assessor, not from "evidence of the correct valuation of the property." (Cert. Admin. R. at 111 ¶ 17(k).) Moreover, the Indiana Board noted that the subject property was a different property on the 2016 assessment date than it was on the 2015 assessment date because Garrett had transferred acreage, demolished improvements, and started the remediation process in the interim. (Cert. Admin. R. at 111 ¶ 17(*l*).)

Garrett argues, however, that its land could not logically be worth more in 2016 than its 2015 assessed value of $68,900 for two reasons: the land was contaminated on the 2016 assessment date just like it was on the 2016 assessment date and it had 4.75 fewer acres to assess on the 2016 assessment date than it had in 2015. (See Pet'r Br.

11

at 9-10.) Furthermore, Garrett claims that the Legislature intended prior year assessments to be probative evidence of its subsequent year's value by making both valuations central to shifting the burden of proof under Indiana Code § 6-1.1-15-17.2.[4] (See Pet'r Br. at 9-10.) See also IND. CODE § 6-1.1-15-17.2 (2018).

While Garrett's claims appear logical at first glance, they ultimately fail to persuade. Garrett advocates that the assessed value should be the same for 2016 as it was for 2015 because the land was contaminated on both assessment dates. (See Pet'r Br. at 6, 9-10.) Cherry-picking one fact as the sole indicator of value, however, ignores the broader factual considerations required to determine a property's market value-in-use. (See generally Manual.) Moreover, the Court will not follow Garrett down the rabbit hole and hold that just because fewer acres were assessed in 2016 than 2015, the 2016 assessed value can be no greater than that in 2015. Instead, the Court will follow its long-held precedent that each tax year stands alone for property tax assessment administrative and judicial appeals. See Barth, Inc. v. State Bd. of Tax Comm'rs, 699 N.E.2d 800, 805 n. 14 (Ind. Tax Ct. 1998) ("[w]here a taxpayer challenges an assessment, the resolution of that challenge does not depend on how the property was previously assessed").

Garrett is correct that a prior year's assessed value must be considered when determining who bears the burden of proof in assessment appeals. (See Pet'r Br. at 10 (discussing I.C. § 6-1.1-15-17.2).) Nonetheless, a prior year's assessed value is not necessarily probative evidence of a subsequent year's assessed value in other contexts. "Probative evidence is evidence sufficient to establish a given fact that, if not contradicted,

---

[4] Indiana Code § 6-1.1-15-17.2, commonly referred to as "the burden-shifting rule," provides that if the assessment of the same property increases by more than 5% from one year to the next, the assessor bears the burden of proving that the assessment is correct. See IND. CODE § 6-1.1-15-17.2 (2018); Orange Cty. Assessor v. Stout, 996 N.E.2d 871, 873 (Ind. Tax Ct. 2013).

12

will remain sufficient." Meadowbrook N. Apartments v. Conner, 854 N.E.2d 950, 953 (Ind. Tax Ct. 2005). For example, a prior year's assessed value is merely one factor to be considered in determining the assessed value in a subsequent year under the trending rules. Cf. 50 IND. ADMIN. CODE 27-5-1 (2016) (discussing the annual adjustment process). Here, Garrett provided no analysis to relate the earlier value to the later assessment date.

In addition, the Indiana Board noted that the property's 2015 value was the product of an agreement between the Assessor and Garrett, memorialized on the Form 134, in which they stipulated to a land value of $68,900 for the March 1, 2015 assessment date. (See Cert. Admin. R. at 56-58, 111 ¶ 17(k).) "[T]he parties' intent [with respect to the stipulation] is to be determined from the 'four corners' of the stipulation itself." U.S. Steel, 901 N.E.2d at 91 (stating that "[b]ecause a stipulation is akin to a contract, the intent of the parties in drafting the stipulation controls") (citation omitted). The Form 134 did not indicate that the agreed 2015 value was intended to extend to the 2016 assessment. (See Cert. Admin. R. at 56-58.) To the contrary, the Form 134 indicates that the Assessor intended the stipulated value to apply exclusively to the 2015 assessment. (See Cert. Admin. R. at 56-58.)

**CONCLUSION**

Garrett's appeal relies generally on legal conclusions that are unsupported by the record evidence. Although Garrett claims reversible error because the Indiana Board's final determination was an abuse of discretion and arbitrary and capricious, the basis of Garrett's appeal is actually a thinly veiled request that the Court reweigh the evidence presented to the Indiana Board.

13

The final determination reveals that the Indiana Board considered the complete evidentiary presentations and provided clear, reasonable, and logical rationale as to why some of the evidence had no probative value. While some of Garrett's naked assertions may raise an eyebrow, Garrett failed to back them up by taking the necessary steps to prove its case to the Indiana Board. The Court cannot and will not reweigh the evidence - to do so, would improperly give Garrett a second bite at the apple. See Stinson v. Trimas Fasteners, Inc., 923 N.E.2d 496, 498-99 (Ind. Tax Ct. 2010) (explaining that the Court cannot reweigh evidence on appeal absent a showing that the Indiana Board abused its discretion). The right place to get such nourishment is before the Indiana Board. The Indiana Board's final determination is AFFIRMED.[5]

---

[5] The Court must mention that the Certified Administrative Record in this case contained a disturbing amount of missing testimony labeled as "(inaudible)" during the administrative hearing. (See, e.g., Cert. Admin. R. at 147-203.) Missing testimony is problematic and impedes review of the administrative proceedings. The Court cautions the Indiana Board to ensure that its administrative records are properly developed and preserved by taking the necessary steps to improve the transcription of its hearings.

14