ATTORNEYS FOR PETITIONER:
**MARILYN S. MEIGHEN**
ATTORNEY AT LAW
Carmel, IN

**BRIAN A. CUSIMANO**
ATTORNEY AT LAW
Indianapolis, IN

**AYN K. ENGLE**
ATTORNEY AT LAW
Indianapolis, IN

RESPONDENTS APPEARING PRO SE:
**RANDY BALLINGER**
**SARA BALLINGER**
Upland, IN



FILED
Sep 30 2020, 4:11 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# INDIANA TAX COURT

| | |
|---|---|
| GRANT COUNTY ASSESSOR, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Cause No. 19T-TA-00019 |
| | ) |
| RANDY & SARA BALLINGER, | ) |
| | ) |
| Respondents. | ) |

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**September 30, 2020**

WENTWORTH, J.

The Grant County Assessor appeals the Indiana Board of Tax Review's final

determination that reduced the assessment of Randy and Sara Ballinger's golf course

land for the 2018 tax year.[1]  Upon review, the Court affirms the Indiana Board's final determination.

## FACTS AND PROCEDURAL HISTORY

During the year in issue, the Ballingers owned approximately 302 acres of land in Marion, Indiana.  (Cert. Admin. R. at 17-21.)  Two 18-hole golf courses were situated on roughly 298 acres (hereinafter, "Walnut Creek").  (See Cert. Admin. R. at 17.)  The remaining acreage contained two single-family residences, two clubhouses, multiple pole barns, and at least two utility sheds.  (See Cert. Admin. R. at 17-21.)

For the 2018 tax year, the Ballingers' property was assigned a total assessed value of $619,700 ($379,600 for land and $240,100 for improvements).  (Cert. Admin. R. at 17, 184.)  Of that value, $312,600 was allocated to Walnut Creek's land and $31,700 was allocated to Walnut Creek's yard improvements, consisting of the 36 golf course holes.  (See Cert. Admin. R. at 17, 20-21.)  Believing that the Walnut Creek portion of the assessment was inconsistent with Indiana Code § 6-1.1-4-42, the Ballingers filed a "Notice to Initiate an Appeal" on June 11, 2018.  (See Cert. Admin. R. at 6-8.)  See also generally IND. CODE § 6-1.1-4-42(c) (2018) (requiring that the income approach be used to determine the true tax value of golf courses).  On November 2, 2018, after holding a hearing, the Grant County Property Tax Assessment Board of Appeals denied the Ballingers' appeal.  (Cert. Admin. R. at 3-5.)

On November 26, 2018, the Ballingers filed a petition for review with the Indiana Board, electing to have their case heard pursuant to the Indiana Board's small claims

[1] Portions of the administrative record are confidential.  Accordingly, this opinion will provide only that information necessary for the reader to understand its disposition of the issue presented. See generally IND. ST. ACCESS RULE 9(A)(2)(d) (2020).

procedures.  (See, e.g., Cert. Admin. R. at 1-2.)  On January 9, 2019, the Indiana Board conducted a hearing on the matter during which the Ballingers claimed that Walnut Creek's land should be valued at $131,196.75 for 2018.  (See Cert. Admin. R. at 182, 185-86.)  In support of this value, the Ballingers presented, among other things, a spreadsheet prepared by their certified public accountant ("CPA") that applied the income approach methodology[2] set forth under 50 IAC 29-1-1 et seq.  (See Cert. Admin. R. at 29, 127-30, 188-89.)  The spreadsheet calculated Walnut Creek's 2018 net operating income ("NOI") by first determining its adjusted gross income (estimating potential gross income minus the golf cart, pro-shop, and other non-golf course revenues) and then subtracting certain operating expenses (e.g., machine repairs, wages, and property taxes), resulting in a negative NOI.  (See Cert. Admin. R. at 29, 129, 194-197.)

Next, the CPA multiplied the adjusted gross income of $306,738.00 by a 5% liability, as required when the NOI is negative, yielding $15,336.90.  (See Cert. Admin. R. at 29, 130.)  Finally, the CPA divided $15,336.90 by the 11.69% capitalization rate prescribed by the Department of Local Government Finance ("DLGF"), concluding to a final 2018 land value of $131,196.75.  (See Cert. Admin. R. at 29, 130.)  (See also, e.g., Cert. Admin. R. at 162-65, 202 (indicating that the DLGF annually publishes a memorandum that sets one statewide capitalization rate for golf courses).)

In response, the Assessor offered the testimony of an Indiana certified Level III assessor-appraiser who maintained that the Ballingers' income approach was flawed because it 1) included the value of the business itself as well as some of its personal

---

[2]  The income approach is "used for income producing properties that are typically rented [and] converts an estimate of income, or rent, [a] property is expected to produce into value through a mathematical process known as capitalization."  2011 REAL PROPERTY ASSESSMENT MANUAL (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2 (2018)) at 2.

3

property, and 2) failed to consider market data by, for example, comparing Walnut Creek's financials to those of comparable golf courses. (See Cert. Admin. R. at 202-07, 211-12.) The Assessor further stated that the Ballingers could not prove their income and expense figures were accurate because they failed to introduce Walnut Creek's entire 2018 tax return, balance sheets, and profit and loss statements into evidence. (See Cert. Admin. R. at 197, 211-12.) Lastly, the Assessor declared that the DLGF's rules and memoranda on the assessment of golf courses should be disregarded because they 1) valued the entire business, not solely golf courses; 2) allowed taxpayers to manipulate their data and artificially lower their assessments; and 3) produced non-uniform inequitable assessments. (See, e.g., Cert. Admin. R. at 203, 207-08, 211.)

On April 9, 2019, the Indiana Board issued its final determination, finding that the Assessor "blatantly failed to value [Walnut Creek] in accordance with Indiana Code § 6-1.1-4-42." (Cert. Admin. R. at 178-79 ¶ 19(f).) The Indiana Board further found that the Ballingers made a prima facie case for reducing their assessment despite any flaws in their evidentiary presentation. (See Cert. Admin. R. at 178-80 ¶ 19(g) (acknowledging that the Ballingers' evidentiary presentation was "vague at times" and "provide[d] only a scant amount of detail regarding the non-golf course income, golf cart income, and pro-shop income").) After weighing the evidence, the Indiana Board determined that Walnut Creek's land assessment should be $131,196 as indicated in the Ballingers' income approach; the Indiana Board therefore reduced the Ballingers' 2018 total assessment from $619,700 to $438,296. (See Cert. Admin. R. at 178, 180 ¶¶ 19(i), 20.)

On May 24, 2019, the Assessor initiated an original tax appeal. The Court heard the parties' oral arguments on November 8, 2019. Additional facts will be supplied as

4

necessary.

## STANDARD OF REVIEW

The party challenging an Indiana Board final determination bears the burden of demonstrating its invalidity. Osolo Twp. Assessor v. Elkhart Maple Lane Assocs., 789 N.E.2d 109, 111 (Ind. Tax Ct. 2003). Accordingly, the Assessor must demonstrate to the Court that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. See IND. CODE § 33-26-6-6(e)(1)-(5) (2020).

## LAW

Indiana assesses golf courses, "area[s] of land and yard improvements that are predominately used to play the game of golf[,]" on the basis of their "true tax value." See IND. CODE § 6-1.1-4-42(a)-(c) (2018) (amended 2020). See also I.C. § 6-1.1-4-42(b) (providing "[a] golf course consists of a series of holes, each consisting of a teeing area, fairway, rough and other hazards, and the green with the pin and cup"); 2011 REAL PROPERTY ASSESSMENT MANUAL ("Manual") (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2(c) (2018)) at 2 (explaining that Indiana assesses all real property on the basis of its "true tax value"). The "true tax value" of a golf course does not refer to its fair market value or the value of the property to the user, but rather the "market value-in-use of [the] property for its current use, as reflected by the utility received by the owner or by a similar user, from the property." See IND. CODE § 6-1.1-31-6(c), (e) (2018); Manual at 2.

5

To determine a golf course's market value-in-use, Indiana's assessing officials are to apply an "income capitalization appraisal approach" that:

(1) incorporate[s] an applicable income capitalization method and appropriate capitalization rates that are developed and used in computations that lead to an indication of value commensurate with the risks for the subject property['s] use;

(2) provide[s] for the uniform and equal assessment of golf courses of similar grade quality and play length; and

(3) exclude[s] the value of personal property, intangible property, and income derived from personal or intangible property.

I.C. § 6-1.1-4-42(c).  See also, e.g., Stinson v. Trimas Fasteners, Inc., 923 N.E.2d 496, 501 (Ind. Tax Ct. 2010) (providing that Indiana's property tax system taxes the value of real property, not intangible business value, investment value, or the value of contractual rights).  To that end, the Legislature mandated that the DLGF – the administrative agency charged with ensuring that Indiana's property assessments are uniform and equal – adopt rules to "establish uniform income capitalization tables and procedures to be used for the assessment of golf courses."  I.C. § 6-1.1-4-42(e); see also generally IND. CODE § 6-1.1-30-1.1 to -17 (2020).

The DLGF has promulgated several administrative regulations that contain the procedures for assessing, reassessing, and annually adjusting golf course assessments. See 50 IND. ADMIN. CODE 29-1-1, -3 (2018).  These regulations provide that assessing officials must:

1) Determine the golf course's potential income;

2) Add its miscellaneous income;

3) Add the potential income to miscellaneous income to determine the golf course's effective gross income;

6

4) Deduct the expenses and replacement reserves from the effective gross income to determine the golf course's NOI; and

5) Divide the NOI by the overall capitalization rate to determine the golf course's assessed value.

50 IND. ADMIN. CODE 29-3-5(a) (2018). See also 50 IND. ADMIN. CODE 29-3-4 (regarding the evaluation of income and expense information for golf courses). If an assessing official determines that a golf course's NOI is negative, however, she must determine the property's market value-in-use that "results in a liability of five percent (5%) of the adjusted gross income" by, among other things, multiplying the golf course's adjusted gross income by 5% and then dividing the result by an overall capitalization rate. See IND. ADMIN. CODE 29-3-7 (2018). With respect to the formulation of the capitalization rate, the DLGF "may disseminate [it], based on market verifiable information, for each county annually" or it may be developed by using: 1) market extraction; 2) effective tax rate; 3) mortgage and equity; and 4) discounted cash flow. See 50 IND. ADMIN. CODE 29-3-6(a)-(b) (2018). See also 50 I.A.C. 29-3-6(a) (providing the "overall capitalization rate expresses the relationship between [NOI] and the market value of the property").

**ANALYSIS**

On appeal, the Assessor asks the Court to reverse the Indiana Board's final determination because it is an abuse of discretion, arbitrary and capricious, unsupported by substantial evidence, and contrary to law. (See Pet'r Br. at 4.) More specifically, the Assessor makes the related claims that the Indiana Board placed the burden of proof on the wrong party and erroneously determined that the Ballingers made a prima facie case for reducing their 2018 assessment. (See Pet'r Br. at 4.)

## I. Burden of Proof

The Assessor claims that the burden of proof lies with the Ballingers because her 2018 assessment of their Walnut Creek golf course property was entitled by law to the presumption of correctness. (See Pet'r Br. at 6-7.) The Assessor contends that the Indiana Board nonetheless failed to place the burden of proof on the Ballingers to prove the assessment was incorrect, and instead, in violation of the law, placed the burden of proof on her to prove the assessment was correct. (See Pet'r Br. at 6-7 (citing, e.g., Eckerling v. Wayne Twp. Assessor, 841 N.E.2d 674 (Ind. Tax Ct. 2006)).) The Assessor maintains that this improper reversal of the burden of proof is evident from, among other things, the final determination repeatedly noting the Assessor's lack of evidence to support the assessment and the Assessor's use of the general assessment rules, not the specific golf course assessment rules, in determining the original assessment. (See Pet'r Br. at 6-7.)

It is well-established that the assessment of real property pursuant to Indiana's Property Assessment Manual and Guidelines, incorporated by reference in 50 IAC 2.4-1-2(c), is presumed to be accurate. See, e.g., Eckerling, 841 N.E.2d at 676; Manual at 3. The Legislature enacted a specific statute that requires the market value-in-use of a golf course to be ascertained through the application of the income approach. See generally I.C. § 6-1.1-4-42. Accordingly, the assessment of the Ballingers' golf course property was entitled to the presumption of correctness if the Assessor applied the income approach methodology set forth under 50 IAC 29-1-1 et seq.

The Assessor does not dispute that she assessed the Ballingers' golf course using the cost approach on a per hole basis. (Compare Cert. Admin. R. at 17-21, 161 with REAL

8

PROPERTY ASSESSMENT GUIDELINES FOR 2002 -- VERSION A (incorporated by reference at 50 IND. ADMIN. CODE 2.3-1-2 (repealed 2010)), Bk. 2, App. G at 2, 6, 37 (regarding the per hole assessment of golf courses).) (See also Oral Arg. Tr. at 11.) Indeed, the Assessor argued at the administrative hearing that her assessment was not only consistent with prior Indiana Board decisions regarding the assessment of Walnut Creek,[3] but also was lower than any of the other golf courses in Grant County on a per hole basis.[4] (See Cert. Admin. R. at 161, 203-04, 207-11.)

The Assessor's arguments are, however, unavailing. First, prior Indiana Board decisions are not binding on the Court, which has long-held "that each tax year stands alone for property tax assessment administrative and judicial appeals." Garrett LLC v. Noble Cty. Assessor, 112 N.E.3d 1168, 1175 (Ind. Tax Ct. 2018) (citation omitted). In addition, the Assessor did not establish that Walnut Creek's assessment was lower than other Grant County golf courses on a per hole basis because the other assessments included more than just the golf course property alone. (See Cert. Admin. R. at 161.) Finally, the Assessor's failure to assess the Ballingers' golf course using the mandated income approach methodology makes the assessment ineligible for the presumption of correctness. Accordingly, the Court is not persuaded that any of these reasons support the claim that the Indiana Board improperly shifted the burden of proof to the Assessor.

The Assessor's claim exposes apparent confusion about the animation of the burden of proof. The Court previously has explained that the term "burden of proof"

---

[3] The administrative record indicates that the Ballingers have challenged several of their assessments over the years. (See, e.g., Cert. Admin. R. at 60-61.) For example, the Indiana Board upheld the Ballingers' 2015 and 2016 assessments, as determined by the Grant County Property Tax Assessment Board of Appeals, because both the Ballingers and the Assessor failed to make prima facie cases for changing the assessments. (See Cert. Admin. R. at 32-50.)

incorporates two burdens: the burden of persuasion, which remains with the same party throughout a litigation, and the burden of production, i.e., the duty to produce evidence, which may shift from party to party during the course of a litigation. Peters v. Garoffolo, 32 N.E.3d 847, 852 n.6 (Ind. Tax Ct. 2015). Therefore, the Indiana Board's observations that the Assessor had not produced evidence to support the assessment may merely have indicated that the burden to produce evidence shifted to the Assessor because the Indiana Board found the Ballingers made a prima facie case by providing sufficient evidence to establish their claim. See id. at 852.

## II. Prima Facie Case

Next, the Assessor claims that the Indiana Board erred in concluding that the Ballingers made a prima facie case for reducing their 2018 assessment. (See, e.g., Pet'r Br. at 7-14.) The Assessor maintains that the Ballingers' income approach evidence was insufficient to shift to her the duty to produce evidence that her assessment was correct for the following reasons: a) they did not submit a USPAP-compliant appraisal, b) their income approach was based on DLGF rules and related memoranda that conflict with Indiana Code § 6-1.1-4-42 and violate Indiana's constitutional requirements of uniformity and equality, c) their analysis used the DLGF's arbitrarily established statewide capitalization rate, and d) their analysis considers income and expenses derived from Walnut Creek's personal property. (See Pet'r Br. at 7-14; Pet'r Reply Br. at 3-6; Oral Arg. Tr. at 32-36, 40-42.)

### a) No USPAP appraisal

The Assessor claims that the Ballingers did not make a prima facia case because they failed to submit a USPAP-compliant appraisal in support of an assessment reduction.

10

(See Pet'r Br. at 7.)  As the Legislature has explained, however, a taxpayer who appeals an assessment under Indiana Code § 6-1.1-15-1.1, as here, is not required to have an appraisal of the property to initiate or prosecute the appeal.  IND. CODE § 6-1.1-15-1.2(h) (2018).  Moreover, this Court has explained that there is no "per se rule that presenting a USPAP-compliant appraisal automatically establishes a prima facie case for reducing an assessment under Indiana's market value-in-use assessment system."  Wigwam Holdings LLC v. Madison Cty. Assessor, 125 N.E.3d 7, 12 (Ind. Tax Ct. 2019); see also generally Lakes of Four Seasons Prop. Owners' Ass'n v. Dep't of Local Gov't Fin., 875 N.E.2d 833 (Ind Tax Ct. 2007) (regarding the making of a prima facie case for reducing an assessment without a USPAP-compliant appraisal), review denied. Consequently, the Ballingers' lack of a USPAP-compliant appraisal is not fatal to making their prima facie case.

### b)  Conflicts with the Law

The Assessor also claims that the Ballingers' income approach lacks probative value to support a prima facie case because it conflicts with Indiana Code § 6-1.1-4-42 and violates Indiana's constitutional requirements of uniformity and equality because it allows the consideration of personal property income and expenses in valuing golf courses.  (See, e.g., Pet'r Br. at 13-14.)  Indiana Code § 6-1.1-4-42 requires assessing officials to "exclude the value of personal property, intangible property, and income derived from personal or intangible property" in determining the market-value-in-use of golf courses.  I.C. § 6-1.1-4-42(c)(3).  The statute also requires the DLGF to adopt rules for establishing, among other things, the procedures to be used for assessing golf courses.  See I.C. § 6-1.1-4-42(e).  Consistent with that mandate, the DLGF adopted 50

11

IAC 29-3-3 that states in part:

> Because a golf course may generate multiple sources of income, including green fees, membership dues, and concessions, assessing officials shall solicit data for gross income and allowable operating expenses from the golf course operators and use federal tax returns or similar evidence as verification that the submissions are correct.
>
> [] Assessing officials may examine multiple years of financial records and federal tax returns, up to and including the most current financial records and federal tax returns of the taxpayer as of March 1 of the year of assessment, to ensure that the appropriate income and expense information for the subject property is utilized.

50 IND. ADMIN. CODE 29-3-3 (2018). Regulation 50 IAC 29-3-4, in turn, details the order by which assessing officials should arrange and evaluate income, allowable expenses, and non-allowable expenses for purposes of developing a golf course's NOI. 50 I.A.C. 29-3-4.

Contrary to the Assessor's argument, none of these provisions authorize the inclusion of income or expenses derived from a golf course's personal property. See, e.g., Hutcherson v. Ward, 2 N.E.3d 138, 142 (Ind. Tax Ct. 2013) (explaining that the Court may not construe an unambiguous statute in a manner that would extend or contract its meaning by reading in language to correct supposed omission); Osolo, 789 N.E.2d at 112 (providing that duly promulgated administrative rules and regulations are subject to the same rules of construction as statutes). In fact, the DLGF's regulations are consistent with Indiana Code § 6-1.1-4-42 by expressly excluding the value of personal property, intangible property, and income derived from personal or intangible property for purposes of determining the market value-in-use of golf courses. Compare 50 IND. ADMIN. CODE 29-3-2 (2018) with I.C. § 6-1.1-4-42(c)(3).

12

Notwithstanding, the administrative record contains a 2018 DLGF PowerPoint presentation on the valuation of golf courses that appears to sanction the inclusion of income derived from personal property: "Income to be excluded should consist of <u>golf cart rental & pro shop income.</u>  Other personal property income consisting of food & beverage will be included."[5]  (Cert. Admin. R. at 144.)  While the statement in the DLGF's PowerPoint is troubling, it is insufficient, without something more, to support a finding that all the DLGF's rules for assessing golf courses and its related memoranda conflict with Indiana Code § 6-1.1-4-42 and the constitutional requirements of uniformity and equality.[6]  Thus, the Assessor's criticism on this point is hollow.

c)  Capitalization rate

Next, the Assessor alleges the Ballingers' use of the DLGF 2018 statewide capitalization rate of 11.69% in their income approach was improper because it fails to account adequately for risk and it lacks a sufficient evidentiary basis because the DLGF did not disclose its methods for developing the rate.  (See, e.g., Pet'r Br. at 9-10.)  The Assessor, however, offers no evidence to substantiate these allegations.  See <u>Herb v. State Bd. of Tax Comm'rs</u>, 656 N.E.2d 890, 893 (Ind. Tax Ct. 1995) (providing that allegations that are unsupported by factual evidence do not constitute probative

---

[5]  The DLGF's PowerPoint presentation refers to a memorandum issued on December 15, 2009, on the valuation of golf courses.  (<u>See</u> Cert. Admin. R. at 144.)  The memorandum, however, was not admitted into evidence during the administrative hearing; consequently, it is not included in the certified administrative record.  Therefore, the Court will not consider the memorandum on appeal.  <u>See</u> generally <u>State Bd. of Tax Comm'rs v. Gatling Gun Club, Inc.</u>, 420 N.E.2d 1324 (Ind. Ct. App. 1981); <u>see</u> <u>also</u> IND. CODE § 33-26-6-3 (2020).

[6]  Although the Assessor cited an International Association of Assessing Officers' guide to explain the "common" method of accounting for a golf course's personal property income and expenses, she did not provide the guide to the Indiana Board during the administrative proceeding.  (<u>See,</u> <u>e.g.</u>, Cert. Admin. R. at 160.)  Therefore, the Court may not consider the guide on appeal.  <u>See,</u> <u>e.g.</u>, I.C. § 33-26-6-3.

evidence).   Accordingly, in the absence of market-based evidence, the Court cannot conclude that the Ballingers' use of the DLGF's 2018 statewide capitalization rate weakens the probative value of their income approach simply because the memorandum did not explain how the rate was derived.[7]

### d)  Income and expenses from personal property

Finally, the Assessor contends that the Ballingers' income approach is not probative and cannot make a prima facie case because it considered income and expenses from personal property in developing NOI.  (See Pet'r Br. at 10-13.)  At the Indiana Board hearing, the Ballingers' CPA testified that even if income and expenses from personal property were excluded from the analysis, Walnut Creek's NOI would still be negative.  (See Cert. Admin. R. at 195-96.)  The Assessor did not attempt to impeach this testimony or provide rebuttal evidence to show that Walnut Creek's NOI would have been positive had Walnut Creek's personal property income and expenses been included.  (See Cert. Admin. R. at 195-211.)  Accordingly, the Indiana Board, as the finder-of-fact, weighed the probative evidence:

> Turning to the [Ballingers'] income capitalization analysis, we agree with the [Assessor] that it contains flaws.  However, we are in the position where we must weigh the flaws made in good faith against the [Assessor's] failure to apply the income approach as required by statute.  [The Ballingers'] 1120S forms offer only partial accounting and provide only a scant amount of detail regarding the non-golf course income, golf cart income, and pro-shop income.  [The CPA] did provide testimony as to how he arrived at his final conclusion of value, albeit the testimony was vague at times.  These problems diminish the credibility of the [Ballingers'] analysis.  With that being said, the [Ballingers] attempted to provide golf course income data

---

[7] If the Assessor believed an explanation of the DLGF's capitalization rate methodology was vital to an accurate determination by the Indiana Board, the Assessor was responsible for getting that information into the administrative record.  The Assessor could have accomplished this by transferring the matter to the Indiana Board's standard hearing procedures that allows the use of discovery tools.  See, e.g., 52 IND. ADMIN. CODE 3-1-3 (2018) (repealed 2020).

14

and valued the property in good faith and in accordance with Indiana Code § 6-1.1-4-42, something that the [Assessor] did not attempt to do.

\*     \*     \*     \*     \*

Ultimately, the [Assessor] failed to correctly assess the golf course according to Ind[iana] Code § 6-1.1-4-42. The [Ballingers] attempted, in good faith, to provide an accurate assessment of the golf course. After weighing the evidence, we find the [Ballingers'] evidence probative, and the assessment must be changed to reflect that.

(Cert. Admin. R. at 178-180 ¶¶ 19(g), (i).)

Now, on appeal, the Assessor invites the Court to do something that it cannot do: reweigh the evidence. See Freudenberg-NOK Gen. P'ship v. State Bd. of Tax Comm'rs, 715 N.E.2d 1026, 1030 (Ind. Tax Ct. 1999), review denied (explaining that this Court may not reweigh the evidence or judge the credibility of witnesses). Moreover, this Court may not reverse an Indiana Board final determination because it simply disagrees with the Indiana Board's factual findings because it may not substitute its judgment for that of the Indiana Board. See Alte Salems Kirche, Inc. v. State Bd. of Tax Comm'rs, 694 N.E.2d 810, 813 (Ind. Tax Ct. 1998). Accordingly, the Indiana Board's determination that the Ballingers made a prima facie case for reducing their 2018 assessment stands.

## CONCLUSION

The final determination in this case reveals that the Indiana Board considered the parties' evidentiary presentations, weighed their probative value, and concluded that the Ballingers' evidence best reflected the market value-in-use of their Walnut Creek golf course land. The Court finds no basis for reversing the Indiana Board's conclusion, and therefore, its final determination is AFFIRMED.

15