PETITIONER APPEARING PRO SE:
**GABRIELLE SNYDER**
Guilford, IN

ATTORNEYS FOR RESPONDENT:
**THEODORE E. ROKITA**
ATTORNEY GENERAL OF INDIANA
**TRENT D. BENNETT**
**STEPHEN J. REEN**
DEPUTY ATTORNEYS GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

| | | |
|---|---|---|
| GABRIELLE SNYDER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 23T-TA-00025 |
| | ) | |
| DEARBORN COUNTY ASSESSOR, | ) | |
| | ) | |
| Respondent. | ) | |

FILED
Dec 13 2024, 3:03 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

### ON APPEAL FROM A FINAL DETERMINATION OF
### THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**December 13, 2024**

MCADAM, J.

This original tax appeal challenges the Indiana Board of Tax Review's ("Indiana Board" or "Board") decision to uphold the 2022 assessment of the taxpayer's residential property. The taxpayer contends that the assessment is excessive compared to prior years and comparable properties. Upon review, the Court holds that the Board did not err in upholding the assessment and affirms the Board's final determination.

### RELEVANT FACTS AND PROCEDURAL HISTORY

Taxpayer Gabrielle Snyder's Guilford, Indiana, property consists of a one-and-a-

half story home featuring 1,582 square feet of finished area and a 1,034 square-foot unfinished basement, situated on a 1.64-acre lot. The Dearborn County Assessor assigned the property an assessed value of $207,600 for 2022, approximately a 37% increase from its 2021 assessment of $152,000.

Snyder appealed the 2022 assessment first to the Dearborn County Property Tax Assessment Board of Appeals and then to the Indiana Board. At the Board's hearing, the Assessor stipulated that she bore the burden of proof under Indiana Code § 6-1.1-15-20, as the property's assessment increase exceeded 5% year-over-year. The Assessor presented evidence to justify the 2022 assessment, including a ratio study, an appraisal, and supporting testimony from an appraiser. The appraisal relied exclusively on the sales comparison approach, using three comparable properties to value the subject property at $242,000 for the 2022 assessment date.[1] It was completed in conformance with the Uniform Standards of Professional Appraisal Practice ("USPAP"), and its valuation was roughly $35,000 above the assessed value. Nonetheless, both the Assessor and the appraiser defended the 2022 assessment as reasonable, pointing to rising county home sale prices since 2019 and noting that assessed values typically trailed market values.

Snyder responded by challenging the validity of the appraisal, arguing that the three comparable properties were "quite different" from her home because they had value-enhancing features that her property lacked. (*See* Cert. Admin. R. at 211-17.) She noted that these properties offered superior amenities, including fireplaces, lakefront

---

[1] The sales comparison approach "estimates the total value of the property directly by comparing it to similar, or comparable, properties that have sold in the market." 2021 REAL PROPERTY ASSESSMENT MANUAL ("Manual") (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2 (2020)) at 2.

locations, wraparound decks, and new concrete patios with built-in gas grills. She also pointed to additional features such as kitchen islands, outdoor kitchens, fire pits, updated or wood flooring, finished lower-level spaces, and brick and vinyl siding combinations. Lastly, she noted that at least one property had one or more apartments.

In addition, she offered her own evidence to show that the 2022 assessment was excessive, including a valuation by a realtor placing her property in the upper $140,000s; data retrieved from the Beacon online property search tool for two similarly sized properties with assessed values in the low $150,000s for 2022; and data from Beacon showing four similarly assessed properties that were newer, larger, or had additional features her property lacked, such as a barn or brick exteriors. She also noted that the assessment may have used an incorrect square footage and overlooked issues depicted in her photographs, emails to the county, and repair estimates, including the "swampy" backyard, the "collapsed vanity[,]" the inoperable restrooms, and the deferred repairs. (*See* Cert. Admin. R. at 44, 53, 85-113, 211-17.) Snyder further questioned the assessment's equity by pointing to its disproportionate increase: while most county properties saw increases of 6% to 9% from 2021 to 2022, her assessment jumped by 36.5%.

The Board issued its final determination, upholding Snyder's 2022 assessment and determining that the Assessor's appraisal provided a credible value estimate that "Snyder did not significantly impeach[.]" (*See* Cert. Admin. R. at 184 ¶ 17(d).) The Board acknowledged Snyder's evidence of her property's deficiencies and differences from other properties but found that she failed to demonstrate how these factors impacted her property's value. The Board also rejected her uniformity and equality challenge,

3

concluding that she did not present sufficient evidence to support the claim. Despite the appraisal's higher valuation, the Board ordered the assessment to remain unchanged because the Assessor had not requested an upward adjustment.

Snyder filed a petition for rehearing with the Board, claiming that the Assessor had not disclosed the comparable properties used in the appraisal until the day of the hearing and that the appraiser relied on "drive-by" visual inspections of the comparables when valuing her property. (*See* Cert. Admin. R. at 188.) She renewed her objections to the comparability of her home and the three comparable properties, emphasizing both the value-enhancing features identified during the Board's hearing and their locations in private communities. Snyder also revisited her earlier evidence, including the realtor's valuation of her property, her home's lack of renovations, and her comparisons of the features, historical assessed values, and the varying assessment increases among properties she considered more and less comparable to her own. The Board denied Snyder's petition for rehearing.

Snyder subsequently initiated this original tax appeal.

**STANDARD OF REVIEW**

This Court's review of Indiana Board decisions is governed by Indiana Code § 33-26-6-6, the provisions of which closely mirror those controlling judicial review of administrative decisions governed by Indiana's Administrative Orders and Procedures Act ("AOPA"). *Compare* IND. CODE § 33-26-6-6(e) (2024) *with* IND. CODE § 4-21.5-5-14(d) (2024). Under Indiana Code § 33-26-6-6, the party seeking to overturn a final determination of the Board bears the burden of demonstrating its invalidity. I.C. § 33-26-6-6(b). Challengers must demonstrate that they have been prejudiced by a final

4

determination of the Board that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. I.C. § 33-26-6-6(e).

The Legislature has specifically designated the Board as the trier of fact, charged with determining the relevance and weight to be assigned to the evidence before it. *See* IND. CODE §§ 6-1.1-15-4(p), -20(f) (2024). Like the review of administrative decisions subject to AOPA, this Court reviews legal conclusions *de novo* but affords deference to the factual determinations of the Board if they are supported by substantial and reliable evidence. *See* I.C. § 33-26-6-6(e)(5); *Indiana Alcohol & Tobacco Comm'n v. Spirited Sales, LLC*, 79 N.E.3d 371, 375 (Ind. 2017) (articulating the standard of review of administrative decisions under AOPA); *Kellam v. Fountain Cnty. Assessor*, 999 N.E.2d 120, 122 (Ind. Tax Ct. 2013) (articulating the standard of review for Board decisions), *review denied*. The Court may not substitute its judgment for that of the Board by reweighing the evidence or reevaluating the credibility of witnesses. *See* IND. CODE § 33-26-6-3(b) (2024); *Kellam*, 999 N.E.2d 122.

## DISCUSSION

Snyder, who proceeds *pro se*, continues to express the concerns and arguments she previously presented to the Board.[2] She challenges the comparability of the three comparable properties, disputes the assessment increase as disproportionate, and restates her claims about her property's deficiencies, historical assessed values, lack of

---

[2] Snyder does not appear to have provided any statutory grounds to support her challenge to the Board's final determination.

5

renovations, the "drive-by appraisal[,]" and the realtor's valuation. (*See* Pet'r Br. at 2; Pet'r Reply Br. at 1-6.) Her approach, while thoughtful, seeks to re-examine the Board's factual findings and falls outside this Court's limited scope of review.

This Court's review of the Board's final determinations is limited. The Court acts as an intermediate, record-reviewing body rather than a factfinder. *Gold Coast Rand Dev. Corp. v. Lake Cnty. Assessor*, 197 N.E.3d 1274, 1279 (Ind. Tax Ct. 2022) ("It is well settled . . . that in challenges to the final determinations of the Indiana Board, the Tax Court is a record-reviewing court – an intermediate reviewer – not the trier of fact.") (citations omitted); *but see* I.C. § 6-1.1-15-20(f) ("In an appeal under this chapter, the Indiana board shall, as trier of fact, weigh the evidence and decide the true tax value of the property as compelled by the totality of the probative evidence before it."). Well-settled precedent establishes that this Court may not reweigh evidence or reassess witness credibility when reviewing the Board's final determinations, as doing so would improperly substitute the Court's judgment for the Board's. *See, e.g.*, *Garrett LLC v. Noble Cnty. Assessor*, 112 N.E.3d 1168, 1176 (Ind. Tax Ct. 2018) ("The Court cannot and will not reweigh the evidence – to do so, would improperly give [the petitioning party] a second bite at the apple.") (citation omitted); *Kellam*, 999 N.E.2d 122. The Board's administrative law judges directly observe witnesses' conduct and demeanor during testimony, placing them in unique positions to make credibility determinations. *See Kraus v. Kraus*, 132 N.E.2d 608, 610 (Ind. 1956) (explaining that appellate courts "deal[] with a cold record and cannot observe the witnesses, their conduct, and manner of testifying while on the witness stand"). By contrast, this Court's review of a cold record inherently lacks that vantage point. Snyder's arguments, however, indicate she is

6

seeking a new evidentiary hearing on appeal. Such a request exceeds the Court's limited scope of review.

Snyder had the opportunity to present her contentions to the Board's designated administrative law judge at the administrative hearing. *See* I.C. § 6-1.1-15-20(e) ("Both parties in an appeal under this chapter may present evidence of the true tax value of the property, seeking to decrease or increase the assessment."). She presented seven exhibits comprised of various documents, cross-examined witnesses, and offered testimony on her own behalf. (*See* Cert. Admin. R. at 204-17.) The Board determined that Snyder did not "significantly impeach" the Assessor's USPAP-compliant appraisal, which it found credibly valued the subject property at $242,000. (*See* Cert. Admin. R. at 184-86 ¶ 17(d), (j).) The Board also found that Snyder failed to present sufficient evidence to support a reduction in the assessment. The Board declined to increase Snyder's 2022 assessment to align with the appraisal valuation because the Assessor had not requested this relief.[3]

Substantial record evidence supports these findings. Under the substantial evidence standard, the Board's decision will stand so long as there is enough "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Clark-Pleasant Cmty. Sch. Corp. v. Dep't of Loc. Gov't Fin.*, 899 N.E.2d 762, 765 (Ind. Tax Ct. 2008) (citation omitted). Snyder's cross-examination of the Assessor was limited

---

[3] The Board's decision not to increase the assessment, despite the evidence presented, because the Assessor did not explicitly request an increase, may raise questions under Indiana Code § 6-1.1-15-20(f). This statute directs the Board to "weigh the evidence and decide the true tax value of the property as compelled by the totality of the probative evidence before it" and permits a determination "higher or lower than the assessment or the value proposed by a party or witness." IND. CODE § 6-1.1-15-20(f) (2024). However, as neither party has raised this issue on appeal, the Court reserves further analysis for another day.

to confirming that the Assessor, rather than her predecessor, approved of the 2019 value assigned to her home. (Cert. Admin. R. at 204-05.) Similarly, her cross-examination of the appraiser focused only on verifying the square footage used to value her home and identifying the three comparable properties. (Cert. Admin. R. at 207.) Moreover, as noted by the Board, Snyder failed to explain how "relevant differences" between her property and the comparable properties affected the valuations. (*See* Cert. Admin. R. at 184-85 ¶ 17(f) ("While [Snyder] did identify some differences between the comparable properties and the subject property, she did not offer any evidence or analysis demonstrating how those differences affected the properties' overall market values-in-use."),188-92, 211-15 (where Snyder identifies but does not quantify certain deficiencies in her property and differences between her property and the other properties in evidence).)

The Board served as the factfinder, and this Court defers to its role and may not substitute its own judgment unless there is a showing of an abuse of discretion. *See Monroe Cnty. Assessor v. Strychalski*, 176 N.E.3d 267, 271 (Ind. Tax Ct. 2021) ("In reviewing a final determination, the Court cannot usurp the Indiana Board's prerogative as the trier of fact by reweighing the evidence or judging the credibility of witnesses absent an abuse of discretion.") (citation omitted). While the Court acknowledges Snyder's continued disagreement with the Board's determination and her desire for a more favorable outcome, that disagreement cannot override the substantial evidence supporting the Board's findings. Accordingly, the Court denies her request to reduce the property's 2022 assessment and subsequent assessed values and holds that the Board

did not err in upholding the 2022 assessment.[4]

**CONCLUSION**

Snyder has not demonstrated that the Board erred in upholding the 2022 assessment of her property. The Board's final determination in this matter is AFFIRMED.

---

[4] Snyder also contends that the Assessor failed to comply with Indiana Code § 6-1.1-35.7-3 and lacked the necessary assessment certifications. The administrative record, however, does not indicate that these claims were raised before the Board. (*See* Cert. Admin. R. at 188-92, 195-217.) Because issues must be presented at the administrative level before they can be considered on appeal, these arguments are waived and cannot be addressed here. *See Inland Steel Co. v. State Bd. of Tax Comm'rs*, 739 N.E.2d 201, 220 (Ind. Tax Ct. 2000) (explaining that when a taxpayer fails to raise an issue administratively, it cannot be considered on judicial review), *review denied*.